IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARK ELLIS, individually and on behalf of all others similarly situated, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | Case No. 1:14-cv-00484-TWT |
| | ) | |
| THE CARTOON NETWORK, INC., a Delaware corporation, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CARTOON NETWORK INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................... 1

BACKGROUND ............................................................................. 3

    A.    Cartoon Network and its App ................................................ 3
    B.    The Alleged Misconduct ..................................................... 4
    C.    Plaintiff's Claim ................................................................. 7

ARGUMENT .................................................................................. 8

    I.    Plaintiff Fails to State a Claim Under The VPPA .............................. 8

        A.    Legal Standard ............................................................. 8
        B.    The 64-digit Android ID is Not Personally Identifiable
             Information ................................................................. 9

    II.    Plaintiff Lacks Standing Because He Has Not Pleaded An
        Injury In Fact ..................................................................... 15

CONCLUSION .............................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Am. Dental Ass'n v. Cigna Corp.,*

    605 F.3d 1283, 1290 (11th Cir. 2010) .................................................................. 9

*Ashcroft v. Iqbal,*

    556 U.S. 662, 678 (2009) ........................................................................... 8, 13

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544, 570 (2007) ........................................................................... 8, 13

*Bochese v. Town of Ponce Inlet,*

    405 F.3d 964, 984 (11th Cir. 2005) .................................................................. 16

*Clapper v. Amnesty Int'l USA,*

    133 S.Ct 1138, 1147 (2013) ........................................................................... 16

*Hines v. Midfirst Bank,*

    No. 1:12-CV-2527-TWT-JSA, 2013 WL 609401, *11 (N.D. Ga. Jan. 8, 2013) 13

*In re Barnes & Noble Pin Pad Litigation,*

    No. 12-cv-8617, 2013 WL 4759588, *4 (N.D. Ill. Sept. 3, 2013) ...................... 20

*In re Hulu Privacy Litig.,*

    No. C 11-03674 LB, 2013 WL 6773794, *8 (N.D. Cal. Dec. 20, 2013) ............ 18

*Johnson v. Microsoft,*

No. C06-0900RAJ, 2009 WL 179440, *4 (W.D. Wash. June 23, 2009)............ 12

*Kehoe v. Fidelity Fed. Bank. & Trust,*

421 F.3d 1209 (11th Cir. 2005) ........................................................................ 19

*Klimas v. Comcast Cable Communications, Inc.,*

2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003)............................ 11, 12

*Lake v. Neal,*

No. 07 C 2742, 2008 WL 4442603, *3 (N. D. Ill. Sept. 29, 2008) .................... 14

*Low v. LinkedIn Corp.,*

900 F.Supp.2d 1010 (N.D. Cal. 2012)............................................................... 14

*Lujan v. Defenders of Wildlife,*

504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)..... 16, 20

*Mollet v. Netflix Inc.,*

Case No. 5:11-CV-01629-EJD, 2012 WL 3731542 (N.D. Cal. August 17, 2012)

................................................................................................................ 14

*Polanco v. Omnicell,*

No. 13-1417, 2013 WL 6823265, *13 (D.N.J. Dec. 26, 2013) .......................... 20

*Reilly v. Ceridian Corp.,*

664 F.3d 38, 42 (3d Cir. 2011) ......................................................................... 20

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,*

    524 F.3d 1229 (11th Cir. 2008) ........................................................ 15

*Sterk v. Best Buy Stores, L.P.,*

    No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ............................ 17

*Viacom Int'l Inc. v. YouTube Inc.,*

    253 F.R.D. 256 (S.D.N.Y. 2008) ...................................................... 10

*Young v. West Publishing Corp.,*

    724 F.Supp.2d 1268 (S.D. Fla. 2010) ............................................ 18, 19

**Statutes and Rules**

18 U.S.C. § 2710 ..................................................................... *passim*

18 U.S.C. § 2724(a) ...................................................................... 18

28 U.S.C. § 1404(a) ....................................................................... 8

47 U.S.C. § 338 .......................................................................... 4

47 U.S.C. § 551 .......................................................................... 4

Federal Rule of Civil Procedure Section 12(b)(1) ..................................... 3, 15, 20

Federal Rule of Civil Procedure Section 12(b)(6) ....................................... 2, 15

## PRELIMINARY STATEMENT

Plaintiff Mark Ellis's ("Plaintiff") lone allegation in this action is that The Cartoon Network, Inc. violated the Video Privacy Protection Act ("VPPA") because when a user viewed a video clip or television show on Cartoon Network's "app," the app sent a third-party (Bango) a record of the content viewed along with the 64-digit ID of the Android phone used to view that content. The VPPA was passed in 1988 in response to Robert Bork's nomination hearings—during which his video cassette rental history was leaked to the press and published in a newspaper. It prohibits a "video tape service provider" from "knowingly disclosing" to a third party "personally identifiable information," which is defined as "information which identifies a person as having requested or obtained specific video materials." The VPPA does not seek to regulate the entire internet by prohibiting disclosure of device identifiers that are routinely transmitted when internet content is viewed.

The insurmountable hurdle for plaintiff is that the VPPA prohibits only the disclosure of information that actually identifies *both* a particular individual and the specific videos that individual viewed. It does not apply to the disclosure of anonymous numbers or device identifiers such as the 64-digit Android ID. Indeed, no court has ever found that such a number alone constitutes "personally

identifiable information" under the VPPA.  In fact, under the analogous Cable Act, which governs the privacy of viewing information for cable television, courts have found that such numbers are ***not*** personally identifiable information.

Perhaps recognizing as much, the complaint speculates (but fails to plead facts showing) that Bango could theoretically combine the 64-digit Android ID with other unidentified information it may obtain from other unidentified sources to decipher an individual's actual identity.  This kind of conclusory and speculative pleading, however, cannot survive a motion to dismiss. Moreover, even if Bango could theoretically combine the 64-digit Android ID with other information to identify plaintiff (which plaintiff does not even allege), the complaint does not assert that this in fact happened to plaintiff.  And any such reverse engineering would not retroactively convert Cartoon Network's disclosure of a device identifier into personally identifiable information under the VPPA.  Thus, plaintiff's VPPA claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

Plaintiff's complaint fails for the additional, independent reason that he has not alleged any cognizable injury and therefore lacks Article III standing.  Plaintiff does not allege that Cartoon Network provided any information to Bango that actually identified his (or any other person's) real-world identity. Nor does plaintiff allege that Bango identified him using the 64-digit Android ID. Instead, the

complaint merely speculates about what Bango **could** do with the information it allegedly receives from the Cartoon Network app.  Put another way, plaintiff does not assert—let alone offer any facts showing—that he personally was adversely affected, much less damaged, by Cartoon Network's conduct.  The Court therefore lacks subject matter jurisdiction over this matter pursuant to Rule 12(b)(1).

Even if plaintiff is given the chance to amend his complaint, he will never be able to fix the core flaw:  the VPPA does not apply to information like the 64-digit Android ID allegedly provided to Bango.  Accordingly, the Court should dismiss the complaint without leave to amend.

## BACKGROUND

### A.   Cartoon Network and its App

The Cartoon Network, Inc. is a Delaware corporation with its headquarters and principal place of business in Atlanta, Georgia.  Complaint ("Compl.") ¶ 5.  It is a subsidiary of Turner Broadcasting System, Inc. ("TBS, Inc."). *See* Cartoon Network's Certificate of Interested Persons and Corporate Disclosure Statement [D.E. 8] ¶ 1.  TBS, Inc. is an indirect, wholly-owned, subsidiary of Time Warner Inc. *Id.*

Cartoon Network produces and distributes to consumers a variety of content, including television programing.  Compl.  ¶ 1.  It distributes this content through

several different mediums.  For example, Cartoon Network offers content through its television channel bearing the same name.  *Id.*  It also offers content through a mobile software application, or "app" that can be downloaded to mobile devices, such as the Android smartphone plaintiff owned.  *Id.* Android is a mobile device operating system developed by Google.  *Id.* at n. 1.  Smartphones, including devices made by HTC and Samsung, use the Android operating system.  *Id.*

To download the Cartoon Network app (the "App") to an Android smartphone, a user must go to Google's app store, called "Google Play."  *See id.* ¶ 9, n. 2.  The App "Description" on Google Play explains that users can utilize the App to watch video clips of various Cartoon Network shows.  *Id.* ¶ 9. Users that log in with their television provider (for example, Xfinity, Cox or DIRECTV) can also watch full episodes of shows or watch live TV streamed directly to their Android devices.[1]  *Id.*

## B.    <u>The Alleged Misconduct</u>

Plaintiff alleges that each time an Android user views a video clip or watches a television show on the App, the App discloses certain allegedly

---

[1] *Live* streaming television is outside the scope of the VPPA, which applies only to the delivery of "prerecorded video cassette tapes or similar audio visual materials" and not live television, the distribution of which is covered by the Cable Act (47 U.S.C. § 551) where it is offered by cable operators and SHVERA (47 U.S.C. § 338) where it is offered by satellite providers.  *See* 18 U.S.C. § 2710 (a)(4).

personally identifiable information ("PII") to unrelated third parties.  Compl.  ¶ 2.

Specifically, plaintiff alleges that unbeknownst to the App's users "each time they

view [a] video clip or television show, the [App] sends a record of such activities

to an unrelated third party data analytics company called Bango."  *Id.* ¶ 12.

According to plaintiff, this "complete record" of materials viewed is sent "along

with the unique Android ID associated with the user's mobile device."  *Id.*

Plaintiff describes the Android ID as "a 64-bit number (as a hex string) that is

randomly generated when a user first sets up the device and should remain constant

for the lifetime of the user's device."  *Id.* at n. 4.

This is the lone allegation against Cartoon Network in the complaint.

Plaintiff does not allege that any information other than the user's 64-digit Android

ID is provided to Bango.  For example, plaintiff does not allege that any Android

user's name, mailing address, or email address is transmitted to Bango.  Nor does

he allege that Cartoon Network had such information about its users since there is

no allegation that registration is required to use the App.  Nor does plaintiff

contend that the viewed content or Android ID is sent to anyone other than Bango.

Rather, the complaint is based solely on the premise that users' viewing

information is transmitted to Bango along with their 64-digit Android ID.

According to plaintiff, Bango is a data analytics company based in the United Kingdom that specializes in "tracking individual user behavior across the Internet and mobile applications." *Id.* ¶ 12, n. 3. Plaintiff alleges that "to gain a broad understanding of a given consumer's behavior across all of the devices that he or she use" analytics companies such as Bango "have to find ways to 'link' their digital personas." *Id.* ¶13. And that these companies' "primary solution has been to use certain unique identifiers to connect the dots." *Id.* Plaintiff does not allege, however, that Bango (or anyone else) performed such "dot connecting" on him or any other user of the App. Nor does he allege that Cartoon Network transmitted to Bango any information that actually identified him (or any other real-world person), such as a name, mailing address, or email address. He also does not allege that Cartoon Network was or is aware of any purported efforts by Bango to identify individuals in this manner.

Instead, plaintiff cites to various materials on Bango's website in a contrived effort to create the specter of such identification. For example, plaintiff points to a statement by Bango that its technology "reveals customer behavior, engagement and loyalty across and between all your websites and apps." *Id.* ¶ 12, n. 3. Plaintiff also pastes into his complaint several slides taken from Bango's website showing how Bango can use information from various sources, including to

potentially create something it calls a "BangoID." *Id.* ¶ 18. Plaintiff then combines these statements and images with his own speculation that "Bango and other analytics companies[2] maintain massive digital dossiers on consumers" and that "[o]nce a consumer's identity is matched with their device's Android ID, a wealth of extremely precise information ***can*** be gleaned about an individual." *Id.* ¶ 17 (emphasis added).

None of the Bango statements described in the complaint reference the Cartoon Network App. Nor do they state that Bango knows, or has access to, any real-world identities of any users, including plaintiff, as opposed to anonymized descriptions. Indeed, nowhere in the complaint does plaintiff allege (or set forth facts showing) that any real-world personal identification of Cartoon Network users has been made, could be made, or will be made anytime soon, much less that such identification is the fault of Cartoon Network.

### C.   **Plaintiff's Claim**

Plaintiff alleges a single cause of action for violation of the Video Privacy Protection Act, 18 U.S.C. § 2710. Plaintiff seeks to bring this action as a class action on behalf of himself and "[a]ll persons in the United States [that] used the [App] to watch videos and had their PII transmitted to Bango." Compl. ¶ 30.

---

[2] What other analytics companies might or might not do is even less relevant than what Bango might or might not do, and should therefore be disregarded.

Plaintiff does not identify any actual injury or damage that he or other potential class members suffered.  Rather, he alleges only that he "and the Class have had their statutorily defined right to privacy violated."  *Id.*  ¶ 47.[3]

## ARGUMENT

## I.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VPPA

### A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Labels, conclusions and "formulaic recitation[s]" will not suffice. *Twombly*, 550 U.S. at 555.  Nor will facts merely consistent with defendant's liability.  *Iqbal*, 556 U.S. at 679.  Where the alleged facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint has alleged—but it has not shown— that the pleader is entitled to relief.

---

[3] This action is one of two alleging violations of the VPPA filed by the same plaintiffs' attorneys within one day of one another.  The other case—against CNN (which shares a parent with Cartoon Network)—was filed in United States District Court for the Northern District of Illinois, and makes allegations nearly identical to those here. CNN has moved to transfer that case to this district pursuant to 28 U.S.C. § 1404(a) to be consolidated with this action.

*Id.* In analyzing a complaint, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

## B.   The 64-digit Android ID is Not Personally Identifiable Information

Congress enacted the VPPA in 1988 after a Washington D.C. newspaper published a profile of Judge Robert Bork "based on the titles of 146 films his family had rented from a video store."  S. Rep. No. 100-599, at 5, *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-5 ("Senate Report").  Under the VPPA, a "video tape service provider" can only be held liable where it "knowingly disclos[es]" to any person "personally identifiable information concerning any consumer."   18 U.S.C. § 2710(b).[4]   The VPPA defines "personally identifiable information" as

---

4 Plaintiff's VPPA claim ultimately fails for the independent reason that Cartoon Network is not a "video tape service provider" under the VPPA in that it does not distribute "prerecorded video cassette tapes or similar audio visual materials."  *See* 18 U.S.C. § 2710(a)(4).   The Senate Report describes "similar" materials as "materials[] such as laser discs, open-reel movies, or CDI technology."  Senate Report at 4342-10.  For purposes of this motion only, however, Cartoon Network is not challenging the sufficiency of plaintiff's pleading with respect to prerecorded materials viewed on the App. Cartoon Network reserves the right to contest this issue, as well as other factual allegations taken as true solely for purposes of this motion, at summary judgment based on facts adduced in discovery.

"information **which identifies a person** as having requested or obtained specific video materials." *Id.* § 2710(a)(3) (emphasis added).  In enacting the VPPA, Congress was focused on the disclosure of real-world identities of individuals.  For example, in the section-by-section analysis of the statute, the Senate Report explained that PII is only information "that identifies a **particular person** as having engaged in a **specific transaction** with a video tape service provider."  Senate Report at 4342-12 (emphasis added). The Senate Report also goes out of its way to explain that the statute "does not restrict the disclosure of information other than personally identifiable information." *Id.*

Given the rationale underlying the statute and its intended purpose, it is not surprising that in the over 25 years since the VPPA's enactment, no court has ever found that a device number—like the 64-digit Android ID relied on here, or the MAC address or IP address of a computer—is PII under the VPPA.  Indeed, the one court that has addressed the issue in the context of the VPPA concluded the opposite.  In *Viacom Int'l Inc. v. YouTube Inc.,* 253 F.R.D. 256 (S.D.N.Y. 2008), defendant YouTube objected to disclosing to plaintiff, its users' YouTube login IDs on the basis that doing so could expose YouTube to liability under the VPPA. On plaintiff's motion to compel, the district court rejected YouTube's argument, stating that the "loginID is an anonymous pseudonym that users create for

themselves when they sign up with YouTube which without more cannot identify specific individuals." *Id.* at 262 (internal quotations and citations omitted).

Courts have reached the same conclusion under statutes similar to the VPPA, such as the Cable Act which limits the ability of a cable provider to "collect personally identifiable information concerning any subscriber." 47 U.S.C. § 551(b)(1). In *Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713 (10th Cir. 2004), cable subscribers alleged that Comcast violated the Cable Act by maintaining "an identifying number known as a 'unit address' [that] allow[ed] Comcast to match the subscriber's purchase to its billing system." *Id.* at 714. As the Tenth Circuit explained, the "heart of the dispute [was] whether the information stored within Comcast's converter boxes is personally identifiable information." *Id.* at 716. The Tenth Circuit affirmed the district court's ruling that it was not, explaining that without information from Comcast's billing or management system "one cannot connect the unit address with a specific customer; without the billing information even Comcast would be unable to identify which individual household was associated with the raw data in the converter box." *Id.*

Similarly, in *Klimas v. Comcast Cable Communications, Inc.*, 2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003), *aff'd on other grounds*, 465 F.3d 271 (6th Cir. 2006), Comcast moved to dismiss plaintiff's claim that Comcast

violated the Cable Act by collecting users' IP addresses. According to the court, the "dispositive issue in regard to Comcast's Motion [was] whether an IP address is PII under the Cable Act." *Id.* at *8. The court held that it was not, finding that "an IP address, by itself, is not 'specific information about the subscriber.'" *Id.* at *10.[5]

Courts analyzing whether anonymized data such as the 64-digit Android ID is PII in other contexts have reached the same conclusion. For example, in *Johnson v. Microsoft*, No. C06-0900RAJ, 2009 WL 179440, *4 (W.D. Wash. June 23, 2009), the court found that Microsoft's collection of user IP addresses did not violate a software licensing agreement that prohibited Microsoft from collecting users' "personally identifiable information" without consent. The court explained that "[i]n order for personally identifiable information to be personally identifiable, it must identify a person. But an IP address identifies a computer, and can do that only after matching the IP address to a list of a particular Internet service provider's subscribers." *Id.* The same reasoning applies here. Like the IP address in *Johnson*, at most, the Android ID identifies a device, not a person. Indeed, the

---

[5] In affirming the district court's decision on other grounds, the Sixth Circuit nevertheless confirmed the district court's conclusion that the IP Address did not identify a person. *See Klimas*, 465 F.3d at 280, n. 2.

device ID stays with a device even if it is transferred to, or used by, multiple people.

Plaintiff's claim here is equally (if not more) attenuated than in the above cases. Plaintiff does not allege that Cartoon Network used the 64-digit Android ID to identify him (or anyone else). Nor does he allege that the third-party Bango, in-fact, took the 64-digit Android ID and combined it with some other source of information to identify him (or anyone else). Rather, plaintiff merely suggests that Bango *could* potentially use that number, along with other unidentified information that Bango *could* theoretically collect from other sources, to identify a person.[6] *See* Compl. §§ 13-19. As an initial matter, this is exactly the type of speculative and conclusory allegation that *Twombly* and *Iqbal* require courts to disregard. *See Hines v. Midfirst Bank*, No. 1:12-CV-2527-TWT-JSA, 2013 WL 609401, *11 (N.D. Ga. Jan. 8, 2013); *Iqbal*, 556 U.S. at 679 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.'").

---

[6] Presumably such identification could be done only if the person did not buy a used device or re-sell their own device.

Moreover, even if the complaint offered any support for the speculative contention that Bango conducts reverse engineering to identify users, any such activities by Bango would not retroactively convert the limited information Cartoon Network discloses into PII sufficient to create VPPA liability for Cartoon Network. *See, e.g.*, *Mollet v. Netflix Inc.*, Case No. 5:11-CV-01629-EJD, 2012 WL 3731542, *4 (N.D. Cal. August 17, 2012) (dismissing VPPA claim and explaining that "[t]he fact that Congress outlawed disclosure to persons other than the consumer [under the VPPA] does not mean that Congress intended to prevent every conceivable manner in which a third-party might gain access to a consumer's PII."); *Lake v. Neal*, No. 07 C 2742, 2008 WL 4442603, *3 (N. D. Ill. Sept. 29, 2008) (noting that under Drivers Privacy Protection Act (DPPA), when information was transferred from state DMV to Board of Election Commissioners ("Board") it created "an entirely new voting record that was, from then on, under the control of the Board" and thus not afforded protection under the DPPA).

Courts have rejected this type of "reverse engineering" theory in similar contexts. In *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012), for example, plaintiffs brought numerous claims against LinkedIn, including for invasion of privacy, based on LinkedIn's alleged sharing of users' unique LinkedIn identification number with third parties, such as web tracking companies.

Plaintiffs alleged that "third parties [could] theoretically de-anonymize a user's LinkedIn ID number" by "associate[ing] a LinkedIn user ID and URL of the user's profile page with a user's cookies ID and thus determine a LinkedIn user's identity." *Id.* at 1017. The court granted LinkedIn's motion to dismiss plaintiffs' invasion of privacy claim, explaining that "[a]lthough Plaintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is not clear that anyone has actually done so, or what information precisely, these third parties have obtained." *Id.* at 1025.

Put simply, as a matter of law, there is no precedent under the VPPA for treating a number like the 64-digit Android ID as PII. Because that is the only information the complaint alleges was provided to Bango, the complaint should be dismissed for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. PLAINTIFF LACKS STANDING BECAUSE HE HAS NOT PLEADED AN INJURY IN FACT

The complaint also should be dismissed because plaintiff has not alleged any actual, concrete, injury and thus lacks standing under Article III of the U.S. Constitution. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (noting that standing "is jurisdictional . . . [and]

has the same effect as dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)").  Article III standing requires

> (1) an injury in fact, which is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of (*i.e.,* the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court); and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To satisfy the injury in fact prong of Article III standing, a plaintiff must present specific, concrete facts showing that the challenged conduct will result in a demonstrable, particularized injury to the plaintiff.  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 984 (11th Cir. 2005).  As the Supreme Court recently reiterated, "threatened injury must be certainly impending to constitute injury in fact . . . allegations of possible future injury are not sufficient" to establish standing.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal citations and quotations omitted).

Here, the allegations are insufficient to show an invasion of a right that adversely affected the plaintiff.  Plaintiff does not allege or provide any facts showing that the purported disclosure of his Android ID identified him in any manner.  Plaintiff does not allege that Cartoon Network disclosed his real name or any other information identifying him as a person to Bango (or even that Cartoon

Network possessed such information in the first place).  Likewise, plaintiff does not allege that Bango in-fact used the 64-digit Android ID number the App allegedly transmitted to Bango to identify him or anyone else in the putative class. Nor does plaintiff allege any economic injury. Instead, plaintiff merely suggests that because Bango **could, *potentially*** use the 64-digit Android ID, in combination with various other unidentified sources of information, to one day theoretically identify plaintiff or others in the putative class, plaintiff  "and the Class have had their statutorily defined right to privacy violated."  Compl.  ¶ 47.  Such speculative allegations are not sufficient to establish Article III standing for two reasons.

*First*, the VPPA should not be interpreted to support standing based on a mere statutory violation without concrete particularized harm.  Other district courts have reached this conclusion. In *Sterk v. Best Buy Stores, L.P.*, No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012), the plaintiff brought an action against Best Buy claiming that it violated the VPPA by impermissibly sharing and retaining records of plaintiff's movie purchases.  *Id.* at *1-2.  After Best Buy moved to dismiss, the court held that plaintiff failed to allege injury in fact as required under Article III.  *Id.* at *8.  In doing so, the court expressly rejected plaintiff's argument that "a claim of violation of a statutory right under the VPPA

alone is sufficient injury-in-fact to confer Article III standing." *Id* at *5. Specifically, the *Sterk* court explained:

> None of the Plaintiff's theories establish an injury-in-fact for his disclosure or retention claims under the VPPA. The SCA and the VPPA require a plaintiff to be "aggrieved" meaning the individual has suffered an Article III injury-in-fact. Therefore, a plaintiff must plead an injury beyond a statutory violation to meet the standing requirement of Article III. Plaintiff argues that a statutory violation is adequate to meet this requirement. However, while Congress is permitted to expand standing to the extent permitted under Article III, Congress cannot abrogate the basic standing requirement that an individual suffer an actual redressable injury-in-fact.

*Id.* (internal citations omitted).[7]

Courts within this circuit have found plaintiffs to lack standing in similar situations. For example, in *Young v. West Publishing Corp.*, 724 F. Supp. 2d 1268 (S.D. Fla. 2010), plaintiffs brought suit against a legal publisher alleging that it violated the DPPA's prohibition on disclosing drivers' personal information. Defendant sought dismissal on the ground that plaintiffs did not adequately allege

---

[7] Cartoon Network recognizes that the court in *In re Hulu Privacy Litig.*, No. C 11-03674 LB, 2013 WL 6773794, *8 (N.D. Cal. Dec. 20, 2013) ("*Hulu*") took a more expansive view of Article III standing under the VPPA. In *Hulu*, however, plaintiffs alleged that Hulu transmitted to third parties "information that identified Plaintiffs and Class Members personally" including Facebook IDs and Hulu IDs, which linked directly to their Hulu profile pages that included the users' names and locations, thus injuring them. *See In re Hulu Privacy Litig.*, No. C 11-03674, 2012 WL 3282960, *2 (N.D. Cal. Aug. 10, 2012). There are no such allegations here.

an injury-in-fact. *Id.* at 1280-1.[8]  The court agreed, holding that plaintiffs "failed to

plea[d] any facts showing that West has disclosed the personal information for an

impermissible use. Therefore, Plaintiffs have failed to show that they have suffered

an injury-in-fact." *Id.* at 1281.

In reaching its decision, the *Young* court distinguished *Kehoe v. Fidelity*

*Fed. Bank. & Trust*, 421 F.3d 1209 (11th Cir. 2005), which held that the DPPA

permitted liquidated damages without actual damages.[9]  The *Young* court explained

that in contrast to *Kehoe* where the defendant "did not dispute that a violation of

the DPPA occurred," in *Young*, not only was there no admission of a violation by

defendant, but plaintiff had not identified an actual disclosure that had occurred. *Id.*

---

[8] The DPPA provision providing for a private right of action is broader than the equivalent VPPA provision.  The DPPA provision does not require the individual bringing the action be "aggrieved" like the VPPA.  *Compare* 18 U.S.C. § 2724(a) *with* 18 U.S.C. § 2710(c).  Instead, the DPPA states that "a person who knowingly obtains, discloses or uses information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."  18 U.S.C. § 2724(a).

[9] The *Young* court analyzed *Kehoe* in the context of ripeness. *Young*, 724 F.Supp.2d at 1281-3.  But in doing so, the court explained that "[s]tanding and ripeness overlap to a certain degree because both doctrines look to the existence of actual injury to the plaintiff caused by the alleged wrong.  Few courts draw meaningful distinctions between the two doctrines; hence this aspect of justiciability is one of the most confused areas of law."  *Id.* at 1282 (internal citations and quotations omitted).

at 1283.  In doing so, the *Young* court stated that "the mere potential of improper disclosure sometime in the future does not constitute an injury."  *Id.*

**Second**, even if the VPPA does support standing based on a mere statutory violation, plaintiff must allege that he personally was identified by the disclosure allegedly made by Cartoon Network, not just that such identification is theoretically possible or happened to others. As discussed above, here, plaintiff does not do so.  He does not allege that Cartoon Network provided information to Bango that identified him.   Nor does he allege that Bango used the 64-digit Android ID the App allegedly transmitted to Bango to identify him. As such, he has not alleged an injury-in-fact that is concrete and particularized and actual or imminent.   *See Lujan*, 504 U.S. at 560-61; *Clapper*, 133 S. Ct. at 1147.[10]

---

10  *See also In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, *4 (N.D. Ill. Sept. 3, 2013) ("Plaintiffs also have not pled any facts to support the conclusion that their information was disclosed.  Therefore Plaintiffs have not alleged an actual injury with respect to the potential disclosure of personal information."); *Polanco v. Omnicell*, No. 13-1417, 2013 WL 6823265, *13 (D.N.J. Dec. 26, 2013) ("In general, the Amended Complaint sets forth only broad and conclusory allegations of harm that fail to satisfy Plaintiff's burden to demonstrate that she suffered an invasion of a legally protected interest which is both concrete and particularized—meaning she was injured in a personal and individual way— and actual or imminent as opposed to conjectural or hypothetical."); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (holding that "allegations of possible future injury are not sufficient to satisfy Article III" because the plaintiffs "had not yet suffered any injury" and would not suffer any injury "[u]nless and until [their] conjectures came true.").

Plaintiff's complaint should therefore be dismissed for lack of standing pursuant to Rule 12(b)(1).

## **CONCLUSION**

For the foregoing reasons, this Court should grant Cartoon Network's motion to dismiss with prejudice.

Dated:         April 25, 2014

By: */s/* James Lamberth
_____

James A. Lamberth
Georgia Bar No. 431851
james.lamberth@troutmansanders.com
Alan W. Bakowski
Georgia Bar No. 373002
alan.bakowski@troutmansanders.com
TROUTMAN SANDERS LLP
600 Peach Tree Street, N.E., Suite 5200
Atlanta, Georgia 30308
(404) 885-3000 (telephone)
(404) 962-3900 (facsimile)

Marc Zwillinger (*admitted pro hac vice*)
marc@zwillgen.com
Jon Frankel (*admitted pro hac vice*)
jon@zwillgen.com
Jeffrey Landis (*admitted pro hac vice*)
jeff@zwillgen.com
ZWILLGEN PLLC
1900 M. Street NW, Suite 250
Washington, DC 20036
(202) 706-5205 (telephone)
(202) 706-5298 (facsimile)

***Attorneys for Defendant, Cartoon Network, Inc.***

## **CERTIFICATE OF COMPLIANCE**

In compliance with Local Rule 7.1(D), I hereby certify that the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

CARTOON NETWORK INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS

ACTION COMPLAINT has been prepared in conformity with Local Rule 5.1.

This brief was prepared with Times New Roman (14 point) type.

This 25th day of April, 2014.

/s/ James. A. Lamberth
James A. Lamberth

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2014, I electronically filed the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

CARTOON NETWORK INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS

ACTION COMPLAINT with the Clerk of Court using the CM/ECF system,

which will send a notice of electronic filing to the following counsel of record:

> Jennifer Auer Jordan
> THE JORDAN FIRM, LLC
> Suite 880
> 1447 Peachtree Street, N.E.
> Atlanta, GA 30309
>
> Benjamin H. Richman
> Rafey S. Balabanian
> James Dominick Larry
> EDELSON PC
> 350 North LaSalle Street, Suite 1300
> Chicago, IL 60654

This 25th day of April, 2014.

> /s/ James. A. Lamberth
> James A. Lamberth
> Georgia Bar No. 431851
> TROUTMAN SANDERS LLP
> 600 Peachtree Street, N.E., Suite 5200
> Atlanta, Georgia  30308-2256
> (404) 885-3000 (voice)
> (404) 962-3900 (facsimile)