## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

| | |
|---|---|
| MARK ELLIS, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-00484-TWT |
| *Plaintiff*, | |
| *v.* | |
| THE CARTOON NETWORK, INC., a Delaware corporation, | |
| *Defendant*. | |

## AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Mark Ellis ("Ellis") brings this Amended Class Action Complaint and Demand for Jury Trial ("Complaint") against The Cartoon Network, Inc., ("Cartoon Network") to put an end to its unlawful practice of disclosing its users' sensitive information, and to obtain redress for such conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.    Cartoon Network produces a variety of (mostly animated) television

programming. Although best known for its eponymous television channel, Cartoon Network also offers content to consumers via other mediums, including on mobile devices (such as Android[1] smartphones) through its proprietary mobile software application, the Cartoon Network App (the "CN App").

2.      Unbeknownst to its users, each time a person views video clips or watches television shows using the CN App on their Android, Cartoon Network discloses their personally identifiable information ("PII")—including a record of every video clip or television showed viewed by the user—to unrelated third parties. In addition to demonstrating a brazen disregard for its users' privacy rights, Cartoon Network's actions also violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which prohibits companies from disclosing their customers' video viewing records to third parties without express written consent.

3.      Cartoon Network's violation of the VPPA is particularly flagrant here, as it programmed the CN App to submit users' PII to a third party web data analytics company. The business models of such "big data" companies center on the collection of disparate pieces of uniquely identifying information and online behavioral data about individual consumers, which they then compile to form

---

[1]      Android is a mobile device operating system developed by Google, Inc. Many smartphones, including certain devices manufactured by HTC Corp. and the Samsung Group, utilize the Android operating system.

comprehensive profiles about consumers' entire digital lives. These profiles are used for targeted advertising, sold as a commodity to other data brokers, or both.

4.     In an era when the collection and monetization of consumer data proliferates on an unprecedented scale, it's important that companies are held accountable for the exploitation of their users' sensitive information. Cartoon Network chose to disregard Plaintiff's and thousands of other users' statutorily protected privacy rights by releasing their sensitive data into the marketplace. Under the VPPA, that makes Cartoon Network liable.

## PARTIES

5.     Plaintiff Mark Ellis is a natural person and citizen of the State of North Carolina.

6.     Defendant The Cartoon Network, Inc., is a corporation and existing under the laws of the State of Delaware, with its headquarters and principal place of business located at 1015 Techwood Drive NW, Atlanta, Georgia 30318. Defendant The Cartoon Network, Inc. conducts business throughout this District, the State of Georgia, and the United States.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under the VPPA. This Court has

personal jurisdiction over Defendant because its headquarters are located in this

District, it conducts business in this District, and the unlawful conduct alleged in

the Complaint occurred in, was directed to, and/or emanated from this District.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a

substantial part of the events giving rise to Plaintiff's claims occurred in this

District.

## FACTUAL BACKGROUND

**I.     Cartoon Network Programmed the CN App to Transmit Its Users' PII, Including Video Viewing Activity, to a Third Party Analytics Company Without Their Consent.**

9.     The CN App is a mobile application that allows consumers to access

Cartoon Network's programming and "see videos from hit Cartoon Network shows

like: Adventure Time, Regular Show, Ben 10, Ninjago, The Looney Tunes Show,

The Amazing World of Gumball, MAD and many more." Cartoon Network also

says that the CN App lets users "Watch our library of video clips, or log in with

your TV provider info to get even more benefits like: Watch live TV! Stream

Cartoon Network directly to your device."[2]

10.     To install the application on an Android, users must visit the Google

---

[2]     *Cartoon Network Video*, Google play,
https://play.google.com/store/apps/details?id=com.turner.cnvideoapp&hl=en (last
accessed May 16, 2014).

4

Play Store, the online digital media platform operated by Google. Once

downloaded and installed, and upon opening the application for the first time, the

CN App presents a loading screen and then proceeds to a main home screen. (*See*

Figure 1, showing the CN App when first opened).



(**Figure 1.**)

11.    At no time during this process, however, does Cartoon Network seek

or obtain the consent of the user to share or otherwise disclose his or her PII to

third parties for any purpose.

> ***1.    The CN App sends its users' video viewing activity and
> uniquely identifying PII to Bango, a data analytics company.***

12.    The CN App is organized into certain sections that are accessible

through the software's main user interface (UI). (*See* Figure 2, showing the CN

App's user interface). Users may browse around these sections to view video clips and television shows. (*See id.*)

 

(**Figure 2.**)

Unbeknownst to its users, however, each time they view video clips or television shows, the CN App sends records of such activities to an unrelated data analytics company called Bango.[3] A complete record is sent each time that the CN App

---

[3]      Bango is a data analytics company based in the United Kingdom. The company claims to specialize in tracking individual user behaviors across the Internet and mobile applications. Bango boasts that its technology "reveals customer behavior, engagement and loyalty across and between all your websites and apps." (*See Bango Dashboard*, Bango PLC, http://bango.com/mobile-analytics/ (last accessed May 16, 2014)). To accomplish this, Bango relies on uniquely identifying information about consumers to track their behavior.

closes, along with the unique Android ID[4] associated with the user's mobile device.

## II.    Data Analytics Companies Rely on Unique Identifiers Associated with Mobile Devices to Create Digital Dossiers On Consumers and Their Online Behaviors.

13.    Today's average consumer uses more than one device to access the Internet to do things like view digital content or make online purchases. This creates challenges for online advertisers and analytics companies. Namely, to gain a broad understanding of a given consumer's behavior across all of the devices that he or she uses, these companies have to find ways to "link" their digital personas. The primary solution has been to use certain unique identifiers to connect the dots.

14.    The graphic from Bango's website shown in Figure 3 below provides a simplistic illustration of how this process works:

---

[4]    The Android ID is a "64-bit number (as a hex string) that is randomly generated when the user first sets up the device and should remain constant for the lifetime of the user's device." *Settings.Secure*, Android Developers, http://developer.android.com/reference/android/provider/Settings.Secure.html#AN DROID_ID (last accessed May 16, 2014).



(**Figure 3.**)

15.    As depicted in Figure 3, the key to successfully tracking an individual's online behavior is to precisely identify the person and link their activities across websites, applications (mobile and otherwise) and devices. To do this, Bango relies on, in relevant part, "[o]perator and device manufacturer supplied identity."[5]

16.    An example of an "[o]perator and device manufacturer supplied identity" in the mobile computing context is the Android ID. That's because

---

[5]    *Bango Dashboard*, Bango PLC, http://bango.com/mobile-analytics/ (last accessed May 16, 2014).

Android IDs are "persistent unique identifiers," meaning they are unique to a specific device and user.

17.   Indeed, even "[w]hen a device has multiple users [] each user appears as a completely separate device, so the ANDROID_ID value is unique to each user."[6] These properties make the Android ID a particularly attractive identifier for analytics companies, because it can be precisely linked to an individual person, and the person cannot avoid being tracked while using the device.

18.   For these reasons, Bango uses device identifiers such as the Android ID to identify and track specific users across multiple electronic devices, applications, and services.

      **1.   *Bango maintains massive digital dossiers on consumers, and uses those dossiers to assemble information about specific individuals and their activities.***

19.   Once a person's identity is matched with their device's Android ID, a wealth of extremely precise information can be gleaned about the individual. For instance, mobile applications that transmit an Android ID along with the user's activity within the software provide an intimate look at how people interact with their software, and reveal information such as the games played by the individual,

---

[6]   *Settings.Secure*, Android Developers, http://developer.android.com/reference/android/provider/Settings.Secure.html#ANDROID_ID (last accessed May 16, 2014).

articles read, videos viewed, and even detail about the sequence of events in which

the user conducted these activities.

20.   An excerpt from one of Bango's marketing materials, shown in

Figure 4 on the following page, accurately portrays the array of information that

feeds into a consumer's digital dossier using data transmitted from sources such as

mobile applications:



(**Figure 4.**)

21.   Figure 4 provides insight into the depth of information stored by

Bango. Of particular note is the graphic's reference to "Applications" (shown in

the top right tab) that are used to assist in the "data enrichment" of a consumer's profile. In other words, Bango's marketing representations describe how applications—like the CN App—are used to collect data on consumers. This information—says Bango—includes a person's location, demographics, phone number, email, purchase history, payment details, and application activity history.

22.    To maximize the amount of data collected about an individual consumer, while also ensuring the accuracy of the information, Bango explains that its digital dossiers are "constructed from an extensive range of network, device and user factors. It [the digital dossier] is constantly updated and enriched by new information gathered from the transactions Bango processes across its massive app store and merchant footprint."[7] With this database of digital dossiers, Bango boats that it "automatically identif[ies]" hundreds of millions of consumers as they act across the Internet.[8]

23.    Bango also asserts that its digital dossiers—which it refers to as consumers' "User Identities"—are "the cornerstone of the Bango Platform – it drives our massively smooth, one-click payment experience and unique analytics

---

[7]      *Bango Identity*, Bango PLC, http://bango.com/identity/ (last accessed May 16, 2014).

[8]      *See* Bango PLC, http://www.bango.com (last accessed May 16, 2014).

precision across devices, websites, apps and campaigns."[9]

24.    Since Bango has amassed such a tremendous amount of data about consumers from a wide variety of sources, it states that, "[n]o matter what connection or device a user is on, with our unique identification methods Bango is able to identify users visiting your mobile pages."[10] And, as explained above, unique identifiers are key to Bango's ability to attribute data (like names, addresses, and billing information) to a single user across multiple devices and platforms.

25.    As a result, each time Cartoon Network disclosed its users' Android IDs and video viewing records to Bango, Bango was able to match the Android ID with the person's actual identity (collected from a variety of other sources), and attribute their private viewing habits to their existing digital dossier. Thus, Bango not only knows each Class member's location, demographics, email and phone number; it also knows everything they watched in the CN App.[11]

---

[9]    *Identity, security and privacy*, Bango PLC, http://bango.com/privacy-security/ (last accessed May 16, 2014).
[10]    *How does Bango identify unique visitors*, Bango PLC, http://support.bango.com/entries/23396967-How-does-Bango-identify-unique-visitors- (last accessed May 16, 2014).
[11]    Following the filing of another case involving similar allegations against Cartoon Network's corporate sibling, CNN, Bango issued a statement to its investors. *See Reported accusations against Bango customer*, Bango Investor Relations (Feb. 20, 2014), http://bangoinvestor.com/2014/02/20/reported-

      2.      ***Congress investigates mobile apps and third party analytics companies while the NSA uses the same data to profile individuals.***

26.      The privacy risks associated with collecting and transmitting PII from mobile applications to third parties is no longer just academic musing. Congress is taking notice, and has held subcommittee meetings—including one focusing on "Consumer Privacy and Protection in the Mobile Marketplace"—to address the issue. During that hearing, Senator John Rockefeller noted that, "these third parties use [consumer data] to target advertising on individuals . . . It is very good business, but it is very cynical. It is an abuse of that power, passing on people's profiles."[12]

27.      At the same time, and perhaps most strikingly, classified documents from the National Security Agency (NSA) reported on by the New York Times show that the government agency targets this very information (uniquely identifying data sent from mobile apps) to create detailed profiles on individuals.[13]

---

accusations-against-customer-cnn/. While Bango's statement denied that it re-sold consumer data to advertisers (a claim neither Ellis nor the plaintiff in the CNN action made), Bango did not dispute that it received PII, nor did it deny that it correlates Android ID with other identifying information in its databases. *See id.*

[12]    S. Hrg. 112-289, Consumer Privacy and Protection in the Mobile Marketplace, http://www.gpo.gov/fdsys/pkg/CHRG-112shrg73133/html/CHRG-112shrg73133.htm (last accessed January 20, 2014).

[13]    James Glanz, Jeff Larson, and Andrew W. Lehren, *Spy Agencies Scour Phone Apps for Personal Data*, N.Y. Times (Jan. 27, 2014),

28.     Despite the controversy surrounding these methods of harvesting and commodifying sensitive consumer data, Cartoon Network chose to disclose nearly every digital movement of its CN App users—including Android IDs—to third party analytics company Bango.

**III.    The VPPA's Importance in the Digital Age.**

29.     When the VPPA was introduced, the late Senator Paul Simon noted that, "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes." S.Rep. No. 100-599 at 7–8 (1988). Senator Patrick Leahy, one of the original drafters of the VPPA, remarked that, "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." *Id.* at 8. And, particularly relevant to Cartoon Network's and Bango's conduct here, Senator Leahy anticipated that "it would be relatively easy at some point [in the future] to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch[;]" and, made clear that "I think that is wrong . . . and I think it is something that we have to guard against." *Id.* at 6–7.

http://www.nytimes.com/2014/01/28/world/spy-agencies-scour-phone-apps-for-personal-data.html#document/p10/a142016.

30.     While these statements rang true in 1988 when the act was passed, the need for legislation like the VPPA in the modern computing era is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized this point, saying that, "[w]hile it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[14]

31.     Likewise, Senator Al Franken summed up the importance of the VPPA in today's world as follows: "[i]f someone wants to share what they watch, I want them to be able to do so . . . But I want to make sure that consumers have the right to easily control who finds out what they watch—and who doesn't. The Video Privacy Protection Act guarantees them that right."[15]

---

[14]     Patrick Leahy, *Statement of Senator Patrick Leahy At A Hearing On The Video Privacy Protection Act*, leahy.senate.gov (Jan. 31, 2012), https://www.leahy.senate.gov/press/statement-of-senator-patrick-leahy-at-a-hearing-on-the-video-privacy-protection-act.

[15]     *Chairman Franken Holds Hearing on Updated Video Privacy Law for 21st Century*, franken.senate.gov (Jan. 31, 2012), https://www.franken.senate.gov/?p=hot_topic&id=1923.

### IV.    Plaintiff Ellis's Experience with the CN App.

32.    Starting in early 2013, Ellis downloaded and began using the CN App on his Android device to watch video clips.

33.    At all times relevant, Ellis never consented, agreed, or otherwise permitted Cartoon Network to disclose his Android ID, video viewing history, or any other PII.

34.    Likewise, Ellis has never been given the opportunity to prevent the CN App from disclosing his PII to third parties.

35.    Nevertheless, each time Ellis viewed a video clip using the CN App, Cartoon Network disclosed his PII—in the form of the title of the videos he had watched and his unique Android ID—to third party analytics company Bango.

## CLASS ALLEGATIONS

36.    **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons in the United States used the CN App to watch videos and had their PII transmitted to Bango.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entity's current and former employees,

officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

37. **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through Defendant's records.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

a) Whether Defendant, through the CN App, unlawfully disclosed and continues to unlawfully disclose its users' personally identifiable information, including their video viewing records, in violation of 18 U.S.C. § 2710(b);

b) Whether Defendant's disclosures were committed knowingly;

c)      Whether Defendant disclosed Plaintiff's and Class members'
personally identifiable information without their consent; and

d)      Whether Defendant violated Plaintiff's and Class members'
right to privacy.

39.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

40.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

41.     **Superiority**:  This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members

of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

42.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Video Privacy Protection Act**
**(18 U.S.C. § 2710)**
**(On behalf of Plaintiff and the Class)**

43.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.     Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery or prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as it provides video (i.e., "similar audio visual materials" under the VPPA's definition) to consumers via its CN App.

45.     Plaintiff Ellis is a "consumer" as defined by the VPPA because he downloaded, installed, and watched videos using the CN App. 18 U.S.C. § 2710(a)(1). Under the Act, this means that he was a "subscriber" of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

46.     While the CN App was installed on his Android mobile device, Ellis viewed numerous video clips using the App. On information and belief, during these occasions and upon closing the CN App, the software disclosed Ellis's unique Android ID and records of the videos he viewed to the third party analytics company Bango.

47.     Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18

U.S.C. § 2710(a)(3). The definition's usage of the word "includes" means that an expansive reading of the term was expressly contemplated.

48.     As detailed more fully in Section II.1 above, the information disclosed by Cartoon Network—the combination of an Android ID and video viewing records—constitutes "personally identifiable information" in this context because it allows Bango to "automatically identify" users such as Ellis, and to attribute their video viewing records to their existing Bango-created profiles.

49.     Thus, Cartoon Network's disclosure of Ellis's Android ID and video viewing records to Bango allowed Bango to use its existing databases to "automatically identify" him and add records about his video viewing records to his profile.

50.     Consistent with this view, the National Institute of Standards and Technology (NIST) defines "personally identifiable information" as "any information that can be used to distinguish or trace an individual's identity."[16] As discussed in Section II and throughout this Complaint, Ellis's Android ID and video viewing records can be used by Bango to distinguish or trace his identity.

51.     The CN App's transmissions of Ellis's PII to Bango constitute

---

[16]     Erika McAllister, Tim Grance, Karen Scarfone, *Guide to Protecting the Confidentiality of Personally Identifiable Information*, National Institute of Standards and Technology (April 2010), http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdf.

"knowing[] disclosures" of Plaintiff's "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

52.     At no time did Ellis ever provide Cartoon Network with any form of consent—either written or otherwise—to disclose his PII to third parties.

53.     Nor were Cartoon Network's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, the CN App's disclosures to Bango (an analytics company) were not necessary for "debt collection activities, order fulfillment, request processing, [or] the transfer of ownership." 18 U.S.C. § 2710(a)(2).

54.     As a result of Cartoon Network's unlawful disclosures, Ellis and the Class have had their statutorily defined right to privacy violated. Ellis seeks an injunction prohibiting Cartoon Network from releasing his and the Class's PII in the future, as well as the maximum statutory and punitive damages available under the VPPA. 18 U.S.C. § 2710(c).

//

//

//

//

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mark Ellis on behalf of himself and the Class, respectfully requests that this Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Mark Ellis as Class Representative, and appointing his counsel as Class Counsel;

B.     Declaring that Cartoon Network's actions, as set out above, violate the VPPA, 18 U.S.C. § 2710;

C.     Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Cartoon Network from engaging in the wrongful and unlawful acts described herein;

D.     Awarding damages, including statutory damages of $2,500 per violation, and punitive damages, where applicable, in an amount to be determined at trial pursuant to the VPPA, 18 U.S.C. § 2710(c);

E.     Awarding Ellis and the Class their reasonable litigation expenses and attorneys' fees;

F.     Awarding Ellis and the Class pre- and post-judgment interest, to the extent allowable; and

     G.    Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Ellis demands a trial by jury for all issues so triable.

                         Respectfully submitted,

                         **MARK ELLIS**, individually and on behalf of all others similarly situated,

Dated: May 16, 2014          By: s/ J. Dominick Larry
                             One of Plaintiff's Attorneys

                         Rafey S. Balabanian
                         rbalabanian@edelson.com
                         Benjamin H. Richman
                         brichman@edelson.com
                         J. Dominick Larry
                         nlarry@edelson.com
                         EDELSON PC
                         350 North LaSalle Street, Suite 1300
                         Chicago, Illinois 60654
                         Tel: 312.589.6370
                         Fax: 312.589.6378

                         Jennifer Auer Jordan (No. 027857)
                         jennifer@thejordanfirm.com
                         THE JORDAN FIRM, LLC
                         1447 Peachtree Street, N.E., Suite 880
                         Atlanta, Georgia
                         Tel: 404.445.8400
                         Fax: 404.445.8477

                         *Counsel for Plaintiff Mark Ellis and the Putative Class*

## LOCAL RULE 5.1 CERTIFICATION

    I, J. Dominick Larry, hereby certify that on May 16, 2014, I filed the foregoing ***Amended Class Action Complaint and Demand for Jury Trial*** with the Clerk of the Court and that such paper complies with Local Rule 5.1 and was prepared using a typeface of 14 points in Times New Roman.

                        s/ J. Dominick Larry
                         *One of Plaintiff's Attorneys*

                        J. Dominick Larry (Admitted *Pro Hac Vice*)
                        nlarry@edelson.com
                        EDELSON PC
                        350 North LaSalle Street, Suite 1300
                        Chicago, Illinois 60654
                        Tel: 312.589.6370
                        Fax: 312.589.6378

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2014, I electronically filed the foregoing ***Amended Class Action Complaint and Demand for Jury Trial*** with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<div align="center" style="margin-left:40%">

s/ J. Dominick Larry
*One of Plaintiff's Attorneys*

J. Dominick Larry (Admitted *Pro Hac Vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

</div>