IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARK ELLIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| *v.* | ) ) | Case No. 1:14-cv-00484-TWT |
| THE CARTOON NETWORK, INC., a Delaware corporation, | ) ) ) ) | |
| *Defendant.* | ) ) ) | |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE CARTOON NETWORK INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

<u>**TABLE OF CONTENTS**</u>

**PRELIMINARY STATEMENT** ........................................................ 1

**BACKGROUND** ............................................................................ 4

    A.   Cartoon Network and its App............................................ 4
    B.   The Original Complaint.................................................... 5
    C.   Cartoon Network's Motion to Dismiss and Plaintiff's Amended Complaint ........................................................................ 7

**ARGUMENT** ............................................................................... 10

I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VPPA............. 11

    A.   Legal Standard............................................................... 11
    B.   The 64-digit Android ID is Not Personally Identifiable Information .................................................................... 11

II.   PLAINTIFF IS NOT A CONSUMER AS DEFINED BY THE VPPA ..... 11

III.  PLAINTIFF HAS NOT PLEADED AN INJURY IN FACT ..................... 20

**CONCLUSION**............................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,

   605 F.3d 1283, 1290 (11th Cir. 2010) ................................................................ 11

*Ashcroft v. Iqbal*,

   556 U.S. 662, 678 (2009)........................................................................... 11, 17

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 544, 570 (2007)........................................................................... 11, 17

*Bochese v. Town of Ponce Inlet*,

   405 F.3d 964, 984 (11th Cir. 2005) ................................................................ 21

*Clapper v. Amnesty Intern. USA et al.*,

   133 S.Ct 1138, 1147 (2013)................................................................................ 21

*Hines v. Midfirst Bank*,

   No. 1:12-CV-2527-TWT-JSA, 2013 WL 609401, *11 (N.D. Ga. Jan. 8, 2013) 17

*In re Hulu Privacy Litig.*,

   No. C 11-03674 LB, 2013 WL 6773794, *8 (N.D. Cal. Dec. 20, 2013) ...... 23, 24

*Johnson v. Microsoft*,

   No. C06-0900RAJ, 2009 WL 179440, *4 (W.D. Wash. June 23, 2009)............ 16

*Kehoe v. Fidelity Fed. Bank. & Trust*,

    421 F.3d 1209 (11th Cir. 2005) ........................................................................... 24

*Klimas v. Comcast Cable Communications, Inc.*,

    2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003) .................................... 15

*Lake v. Neal*,

    No. 07 C 2742, 2008 WL 4442603, *3 (N. D. Ill. Sept. 29, 2008) ...................... 17

*Low v. LinkedIn Corp.*,

    900 F.Supp.2d 1010 (N.D. Cal. 2012) .................................................................. 18

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) ..... 21, 25

*Mollet v. Netflix Inc.*,

    Case No. 5:11-CV-01629-EJD, 2012 WL 3731542 (N.D. Cal. August 17, 2012)

    .............................................................................................................................. 17

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,

    524 F.3d 1229 (11th Cir. 2008) ........................................................................... 20

*Sterk v. Best Buy Stores, L.P.*,

    No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ............................. 22

*Viacom Int'l Inc. v. YouTube Inc.*,

    253 F.R.D. 256 (S.D.N.Y. 2008) ........................................................................ 14

*Young v. West Publishing Corp.*,

    724 F.Supp.2d 1268 (S.D. Fla. 2010)........................................................ 23, 24

**Statutes and Rules**

18 U.S.C. § 2710 .......................................................................... *passim*

18 U.S.C. § 2724(a)................................................................................ 24

28 U.S.C. § 1404(a)............................................................................... 10

47 U.S.C. § 338 ....................................................................................... 5

47 U.S.C. § 551 .................................................................................. 5, 15

Federal Rule of Civil Procedure Section 12(b)(1) ........................... 21, 26

Federal Rule of Civil Procedure Section 12(b)(6) ................................ 19

**Legislative Materials**

S. Rep. No. 100-599, 100th Cong., 2d Sess. (1988) ........................ 12, 13

## PRELIMINARY STATEMENT

Even after amending his complaint in response to Cartoon Network's Motion to Dismiss, plaintiff Mark Ellis's ("Plaintiff") claims still fail as a matter of law. Plaintiff's lone allegation against Cartoon Network remains the same—that it violated the Video Privacy Protection Act ("VPPA") because when unknown users view a video clip or television show on Cartoon Network's "app," the app sends to a third-party (Bango) a record of the content viewed along with the 64-digit ID of the Android device used to view that content. The VPPA prohibits a "video tape service provider" from "knowingly disclosing" to a third party "personally identifiable information," which is "information which identifies a person as having requested or obtained specific video materials." The VPPA does not regulate the entire internet by prohibiting disclosure of device identifiers and machine or IP addresses that are routinely transmitted when content is viewed.

The insurmountable hurdle for Plaintiff remains that the VPPA prohibits only the disclosure of information that actually identifies ***both*** a specific individual ***and*** the specific videos that individual viewed. It does not apply to the disclosure of anonymous numbers or device identifiers, such as the 64-digit Android ID, by an entity (like Cartoon Network) that itself does not know who the user is. To the contrary, both under the VPPA and the analogous Cable Act, which governs the

privacy of viewing information for cable television, courts have found that such numbers are ***not*** personally identifiable information.

Perhaps recognizing as much, the Amended Complaint excerpts various passages from Bango's website to try to speculate that Bango could hypothetically combine the 64-digit Android ID with other unidentified information it may have obtained from other unidentified sources to later decipher an individual's actual identity. As an initial matter, many of the passages cited do not stand for the proposition Plaintiff claims. But even if they did, none of the passages shows that Bango can or did actually identify a specific person, like the Plaintiff, through data provided by Cartoon Network. Moreover, even if Bango could theoretically combine the 64-digit Android ID with other information to identify Plaintiff (which Plaintiff does not even allege), the Amended Complaint does not assert that this in fact happened to Plaintiff. Thus, Plaintiff has not alleged facts that would constitute a violation of the VPPA.

Plaintiff's Amended Complaint fails for the additional, independent, reason that he is not a "consumer" under the VPPA. In order to satisfy that definition, Plaintiff must be a "renter[], purchaser[], or subscriber[]" of video content. Plaintiff alleges only that he is "subscriber" but does not fall under the common

understanding of that term where all he did was download and use a free app, without registering or providing any information to Cartoon Network.

Finally, the Amended Complaint should be dismissed because Plaintiff has not alleged any cognizable injury and therefore lacks Article III standing. Plaintiff does not allege that Cartoon Network provided any information to Bango that actually identified his (or any other person's) real-world identity. Nor does Plaintiff allege that Bango identified him using the 64-digit Android ID. Instead, the complaint merely speculates about what Bango *could* do with the information it allegedly receives from the Cartoon Network app when combined with information Bango allegedly receives from *other* sources. Put another way, Plaintiff does not assert—let alone offer any facts showing—that he personally was adversely affected, much less damaged, by Cartoon Network's conduct. The Court therefore lacks subject matter jurisdiction over this matter.

Plaintiff has already amended his complaint once and was unable to fix its core flaw: the VPPA does not apply to information like the 64-digit Android ID allegedly provided to Bango by an entity that itself does not even know who the user is. Additional amendments cannot and will not cure this flaw. Accordingly, the Court should dismiss the Amended Complaint without leave to amend.

# BACKGROUND

**A.      Cartoon Network and its App**

The Cartoon Network, Inc. is a Delaware corporation with its headquarters and principal place of business in Atlanta, Georgia. Amended Complaint ("Am. Compl.") ¶ 6, ECF No. 23. It is a subsidiary of Turner Broadcasting System, Inc. ("TBS, Inc."). *See* Cartoon Network's Certificate of Interested Persons and Corporate Disclosure Statement at ¶ 1, ECF No. 8. TBS, Inc. is an indirect, wholly-owned, subsidiary of Time Warner Inc. *Id.*

Cartoon Network produces and distributes a variety of content, including television programing. Am. Compl. ¶ 1, ECF No. 23. It distributes this content through several different mediums. For example, Cartoon Network offers content through its television channel bearing the same name. *Id.* It also offers content through a mobile software application, or "app," that can be downloaded to mobile devices, such as the Android smartphone Plaintiff owned. *Id.* Android is a mobile device operating system developed by Google. *Id.* at n. 1. Smartphones devices, including those made by HTC and Samsung, use Android's operating system. *Id.*

To download the Cartoon Network app (the "App") to an Android smartphone, a user must go to Google's app store, called "Google Play." *See id.* ¶ 10, n. 2. The App "Description" on Google Play explains that users can utilize

the App to watch video clips of various Cartoon Network shows. *Id.* ¶ 10. Users that log in with their television provider (for example, Xfinity, Cox, or DIRECTV) can also watch full episodes of shows or watch live TV streamed directly to their Android devices.[1] *Id.* Plaintiff does not allege that users must register or provide any information to Cartoon Network to use the App or watch videos.

## B. The Original Complaint

On February 19, 2014, Plaintiff filed his original complaint (the "Original Complaint"). It alleged that each time an Android user views a video clip or watches a television show on the App, the App discloses certain allegedly personally identifiable information ("PII") to an unrelated third party. Original Complaint ("Orig. Compl.") ¶ 2, ECF No. 1. Specifically, the Original Complaint alleged that unbeknownst to the App's users "each time they view [a] video clip or television show, the [App] sends a record of such activities to an unrelated third party data analytics company called Bango." *Id.* ¶ 12. According to Plaintiff, this "complete record" of materials viewed is sent "along with the unique Android ID associated with the user's mobile device." *Id.*

---

[1] *Live* streaming television is outside the scope of the VPPA, which applies only to the delivery of "prerecorded video cassette tapes or similar audio visual materials" and not live television, the distribution of which is covered by the Cable Act (47 U.S.C. § 551) where it is offered by cable operators and SHVERA (47 U.S.C. § 338) where it is offered by satellite providers. *See* 18 U.S.C. § 2710 (a)(4).

That was the lone allegation against Cartoon Network in the Original Complaint. The Original Complaint did not allege that any information other than the user's 64-digit Android ID was provided to Bango. Nor did it allege that Cartoon Network knew the actual identity of its users; or that the viewed content or Android ID was sent to anyone other than Bango. Most importantly, the Original Complaint did not allege that Cartoon Network transmitted to Bango any information that actually identified him (or any other real-world person), such as a name, mailing address, or email address.

Instead, the majority of the Original Complaint was dedicated to citing various materials on Bango's website in an effort to create the specter of such identification. For example, the Original Complaint pointed to a statement by Bango that its technology "reveals customer behavior, engagement and loyalty across and between all your websites and apps." *Id.* ¶ 12, n.3. Plaintiff also pasted into the Original Complaint several slides taken from Bango's website showing how Bango can use information from various sources, including to potentially create something it calls a "BangoID." *Id.* ¶ 18. Plaintiff then combined these statements and images with his own speculation that "Bango and other analytics companies maintain massive digital dossiers on consumers" and that "[o]nce a consumer's identity is matched with their device's Android ID, a wealth of

extremely precise information can be gleaned about the individual." *Id.* ¶ 17.

### C. Cartoon Network's Motion to Dismiss and the Amended Complaint

On April 25, 2014, Cartoon Network moved to dismiss the Original Complaint on the grounds that the Android ID could not be PII under the VPPA because it did not identify a ***particular person*** as having engaged in a specific transaction with a video tape service provider as required by the statute, and that Plaintiff lacked standing because he did not allege any injury in fact. *See* Cartoon Network's Mem. of P. & A. in Supp. of Mot. to Dismiss 8-21, ECF No. 20-1. In doing so, Cartoon Network pointed out that none of the Bango statements identified in the Original Complaint referenced the Cartoon Network App. *Id.* at 7. Nor did they state that either Cartoon Network or Bango knows, or has access to, any real-world identities of any users, including Plaintiff, as opposed to anonymized descriptions. *Id.* And nowhere in the Original Complaint did Plaintiff allege that he was identified by the disclosure allegedly made by Cartoon Network, as opposed to such identification merely being theoretically possible. *Id.*

On May 16, 2014, rather than oppose Cartoon Network's Motion to Dismiss, Plaintiff filed the Amended Complaint. The Amended Complaint does not make ***any*** additional allegations against Cartoon Network. Indeed, Plaintiff's lone allegation remains that when a user views a video clip or television show on the

Cartoon Network App, the App sends Bango a record of the content viewed and the 64-digit ID of the Android phone used to view that content. Am. Compl. ¶ 12, ECF No. 23. The only substantive difference between the Original Complaint and the Amended Complaint is that the latter adds more excerpts from Bango's website, which Plaintiff again seeks to cobble together with his own speculation to advance his theory that Bango could make real-world personal identification of individuals. This second effort fails to salvage Plaintiff's complaint.

As an initial matter, many of these new excerpts are misleading and taken out of context. For example, the Amended Complaint adds an excerpt from a guide intended for developers of Android apps for the purported proposition that "when a device has multiple users [] each user appears as a completely separate device, so the ANDROID ID value is unique to each user." *Id.* ¶ 17. What Plaintiff fails to mention, however, is that the referenced page expressly states that "the user must explicitly modify [this preference]"—*i.e.*, the user must change the settings for his or her device to enable this multi-user functionality as opposed to it being a default setting.[2] Instead (further supporting the notion that device IDs do

---

[2] *See* Declaration of James Lamberth in Support of Cartoon Network's Motion to Dismiss Amended Complaint ("Lamberth Decl."), Ex. 1. The exhibits attached to the declaration may be considered by this Court under the incorporation by reference doctrine in determining this motion to dismiss. *Brooks v. Blue Cross and*

not identify a specific person), the same guide informs app developers that "if your app requests one of the hardware device identifiers (such as the . . . ANDROID_ID) they will provide the same value for each user because these identifiers are tied to the hardware and not the user." Lamberth Decl., Ex. 2.

More fundamentally, notwithstanding the addition of such passages, the Amended Complaint, like the Original Complaint, does not even allege (let alone set forth facts showing) that any real-world personal identification of Cartoon Network users has been made, could be made, or will be made anytime soon, much less that Cartoon Network knew such identification would occur. What is alleged is merely that Bango purports to be able to make educated guesses as to whether a particular device is unique based on information it gets from other sources. The Amended Complaint never alleges an actual identification that has been made, nor any actual injury or damage that Plaintiff or other potential class members suffered. Rather, like the Original Complaint, the Amended Complaint offers only

---

*Blue Shield of FL., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (stating that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents as part of the pleadings for purposes of Rule 12(b)(6) dismissal"). Here, both exhibits to the Lamberth Declaration are excerpts from the Android developer guide, which the Amended Complaint quotes from and relies on. *See* Am. Compl. ¶¶ 12, 17.

conclusory allegations that Plaintiff and the class "have had their statutorily defined right to privacy violated." *Id.* ¶ 54.[3]

## ARGUMENT

The Amended Complaint should be dismissed because, even after taking the proverbial second bite at the apple, Plaintiff has not corrected the fundamental and fatal flaws in the Original Complaint. Nothing added to the Amended Complaint changes the fact that the 64-digit Android ID allegedly provided to Bango identifies only a device, not a specific individual who watched a specific video, as required under the VPPA. Indeed, Plaintiff is not even a "consumer" as that term is defined by the VPPA. Likewise, no number of out-of-context excerpts from Bango's website can change that Plaintiff does not allege that he (or anyone else) was actually identified as a result of Cartoon Network's conduct. Without an allegation that Plaintiff (or anyone else) was adversely affected, much less damaged, the Court lacks subject matter jurisdiction over this matter.

---

[3] This action is one of several alleging violations of the VPPA filed by the same attorneys representing Plaintiff. In addition to the case against CNN (which shares a parent with Cartoon Network) filed in United States District Court for the Northern District of Illinois, which CNN has moved to transfer to this district pursuant to 28 U.S.C. § 1404(a), the same attorneys have brought similar actions against Dow Jones (*Locklear v. Dow Jones Company Inc.*, No. 1:14-cv-00744-SCJ (N.D. Ga.) (Hon. Steven J. Jones)) and ESPN (*Eichenberger v. ESPN, Inc.*, No. 2:14-cv-00463 (W.D. Wash.) (Hon. Thomas S. Zilly)).

## I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VPPA

### A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).    Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged."    *Id*.    Labels, conclusions and "formulaic recitation[s]" will not suffice. *Twombly*, 550 U.S. at 555.    Where alleged facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id*. In analyzing a complaint, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."    *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### B.    The 64-digit Android ID is Not PII

Congress enacted the VPPA in 1988 after a Washington, D.C. newspaper published a profile of Judge Robert Bork "based on the titles of 146 films his family had rented from a video store."    S. Rep. No. 100-599, at 5, *reprinted in*

1988 U.S.C.C.A.N. 4342-1, 4342-5 ("Senate Report"). Under the VPPA, a "video tape service provider" can only be held liable where it "knowingly disclos[es]" to any person "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b).[4] The VPPA defines "personally identifiable information" as "information *which identifies a person* as having requested or obtained specific video materials." *Id.* § 2710(a)(3) (emphasis added). In enacting the VPPA, Congress was focused on the disclosure of viewing habits of real-world individuals. For example, in the section-by-section analysis of the statute, the Senate Report explained that PII is only information "that identifies a *particular person* as having engaged in a *specific transaction* with a video tape service provider." Senate Report at 4342-12 (emphasis added). The Senate Report also goes out of its way to explain that the statute "does not restrict the disclosure of information other than personally identifiable information." *Id.* Put another way, the disclosure "must be pegged to an identifiable person (as opposed to an

---

[4] Plaintiff's VPPA claim ultimately fails for the additional, independent, reason that Cartoon Network is not a "video tape service provider" under the VPPA in that it does not distribute "prerecorded video cassette tapes or similar audio visual materials." *See* 18 U.S.C. § 2710(a)(4). For purposes of this motion only, however, Cartoon Network is not challenging the sufficiency of Plaintiff's pleading with respect to prerecorded materials viewed on the App. Cartoon Network reserves the right to contest this issue, as well as other factual allegations taken as true solely for purposes of this motion, at summary judgment based on facts adduced in discovery.

anonymous person)." *In re Hulu Privacy Litig.,* C 11-03764 LB, 2014 WL 1724344, *7 (N.D. Cal. Apr. 28, 2014) ("Hulu").

Given the rationale underlying the statute and its intended purpose, it is not surprising that in the over 25 years since the VPPA's enactment, no court has ever found a number that merely identifies a device like a computer, tablet, modem, set-top-box or phone to be PII under the VPPA. Indeed, courts that have addressed the issue in the context of the VPPA have concluded the very opposite. Most recently, the *Hulu* court found that Hulu did not violate the VPPA by disclosing certain "unique numeric identifications tied to video watching" to analytics company comScore. *Id.* In doing so, the *Hulu* court explained that to violate the VPPA, the "disclosed information must identify a specific person and tie that person to video content that the person watched." *Id.* at *9. And that, as such, a "unique identifier - without more" (like what Hulu disclosed to comScore) does not violate the VPPA, even if that number "hypothetically could have been linked to video watching." *Id.* at *12, *1.[5] This same rationale applies squarely here. Plaintiff

---

[5] The *Hulu* court distinguished the "comScore disclosures" from Hulu's alleged disclosures to Facebook because Hulu made the "Facebook disclosures" to Facebook itself and included, all in a single transaction, the video content viewed plus the viewer's Facebook ID, which the court viewed as similar to providing a name to Facebook given that a Facebook ID maps directly to a particular person on Facebook. The court reasoned that in that specific context, the disclosure of the

does not allege that Cartoon Network transmitted anything to Bango (an analytics company like comScore) other than a "unique identifier" that Bango could hypothetically link to video watching. The Amended Complaint should thus be dismissed under the same reasoning.

In *Viacom Int'l Inc. v. YouTube Inc.,* 253 F.R.D. 256 (S.D.N.Y. 2008), defendant YouTube objected to disclosing to plaintiff its users' YouTube login IDs on the basis that doing so could expose YouTube to liability under the VPPA. On plaintiff's motion to compel, the district court rejected YouTube's argument, stating that the "loginID is an anonymous pseudonym that users create for themselves when they sign up with YouTube which without more cannot identify specific individuals." *Id.* at 262 (internal quotations and citations omitted).

Courts have reached the very same conclusion under similar privacy statutes like the Cable Act, which limits the ability of a cable provider to "collect personally identifiable information concerning any subscriber." 47 U.S.C. § 551(b)(1). In *Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713 (10th Cir. 2004), cable subscribers alleged that Comcast violated the Cable Act by maintaining "an identifying number known as a 'unit address' [that] allow[ed] Comcast to match the subscriber's purchase to its billing system." *Id.* at 714. As

Facebook ID to *Facebook* itself could be functionally equivalent to disclosure of the person's name to *Facebook*. *Id.* at *2-3.

the Tenth Circuit explained, the "heart of the dispute [was] whether the information stored within Comcast's converter boxes is personally identifiable information." *Id.* at 716. The Tenth Circuit affirmed the district court's ruling that it was not PII, explaining that without information from Comcast's billing or management system "one cannot connect the unit address with a specific customer; without the billing information even Comcast would be unable to identify which individual household was associated with the raw data in the converter box." *Id.*[6]

Similarly, in *Klimas v. Comcast Cable Communications, Inc.*, 2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003), *aff'd on other grounds*, 465 F.3d 271 (6th Cir. 2006), Comcast moved to dismiss plaintiff's claim that it violated the Cable Act by collecting users' IP addresses. The "dispositive issue in regard to Comcast's Motion [was] whether an IP address is PII under the Cable Act." *Id.* at *8. The court held that it was not, finding that "an IP address, by itself, is not 'specific information about the subscriber.'" *Id.* at *10.[7]

---

[6] In *Pruitt*, Comcast had the theoretical ability to link the unit address to the subscriber's name by consulting its billing system. Nevertheless, standing alone, the unit address stored in the cable boxes were deemed not be PII. This case makes clear that device identifiers are not PII even where such linkage is theoretically possible.

[7] In affirming the district court's decision on other grounds, the Sixth Circuit nevertheless confirmed the district court's conclusion that the IP Address without more did not identify a person. *See Klimas*, 465 F.3d at 280, n. 2.

Courts analyzing whether anonymized numbers like the 64-digit Android ID are PII in other contexts have also reached the same conclusion. In *Johnson v. Microsoft*, No. C06-0900RAJ, 2009 WL 179440, *4 (W.D. Wash. June 23, 2009), the court found that Microsoft's collection of user IP addresses did not violate a software licensing agreement that prohibited Microsoft from collecting users' "personally identifiable information" without consent. The court explained that "[i]n order for personally identifiable information to be personally identifiable, it must identify a person. But an IP address identifies a computer, and can do that only after matching the IP address to a list of a particular Internet service provider's subscribers." *Id.* Like the IP address in *Johnson*, at most, the Android ID identifies a device, not a person.

Plaintiff's amended claim here is equally (if not more) attenuated than in the above cases. Plaintiff does not allege that Cartoon Network used the 64-digit Android ID to identify him (or anyone else). Nor does he allege that the third-party Bango, in-fact, took the 64-digit Android ID and combined it with some other source of information to identify him (or anyone else). Rather, Plaintiff merely suggests that Bango **could potentially** use that number, along with other unidentified information that Bango **could theoretically** collect from other sources, to later identify a person. *See* Am. Compl. ¶¶ 19-25. This is exactly the type of

speculative and conclusory allegation that *Twombly* and *Iqbal* require courts to disregard. *See Hines v. Midfirst Bank*, No. 1:12-CV-2527-TWT-JSA, 2013 WL 609401, *11 (N.D. Ga. Jan. 8, 2013); *Iqbal*, 556 U.S. at 679 (where the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.'").

Moreover, even if the complaint offered any support for the speculation that Bango somehow reverse engineers this single piece of anonymous information provided by Cartoon Network to identify users, any such purported activities by Bango would not retroactively convert that data into PII sufficient to create VPPA liability for Cartoon Network. *See, e.g.*, *Mollet v. Netflix Inc.*, Case No. 5:11-CV-01629-EJD, 2012 WL 3731542, *4 (N.D. Cal. August 17, 2012) (dismissing VPPA claim and explaining that "fact that Congress outlawed disclosure to persons other than the consumer does not mean that Congress intended to prevent every conceivable manner in which a third-party might gain access to a consumer's PII."); *Lake v. Neal*, No. 07 C 2742, 2008 WL 4442603, *3 (N. D. Ill. Sept. 29, 2008) (noting that under the Drivers Privacy Protection Act (DPPA), when information was transferred from a DMV to Board of Election ("Board") it created "an entirely new voting record that was, from then on, under the control of the Board" and thus not afforded protection under the DPPA).

Courts have rejected this re-identification argument in similar contexts. In *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012), plaintiffs brought numerous claims against LinkedIn, including for invasion of privacy, based on LinkedIn's alleged sharing of users' unique LinkedIn identification number with third parties, such as web tracking companies. Plaintiffs alleged that "third parties [could] theoretically de-anonymize a user's LinkedIn ID number" by "associate[ing] a LinkedIn user ID and URL of the user's profile page with a user's cookies ID and thus determine a LinkedIn user's identity." *Id.* at 1017. The court dismissed plaintiffs' invasion of privacy claim, explaining that "[a]lthough plaintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is not clear that anyone has actually done so, or what information precisely, these third parties have obtained." *Id.* at 1025.

As a matter of law, there is no precedent for treating a number like the 64-digit Android ID as PII under the VPPA. Because that is the only information the Amended Complaint alleges was provided to Bango, the Amended Complaint should be dismissed for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. PLAINTIFF IS NOT A CONSUMER AS DEFINED BY THE VPPA

Even if Plaintiff adequately alleged a disclosure of PII as required by the VPPA, his claim should be dismissed for the independent reason that he is not a "consumer" under the VPPA, and therefore the act does not apply to him. The VPPA defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiff does not allege that he rented or purchased content from Cartoon Network. Rather, he seeks to call himself a "subscriber" of Cartoon Network because he "downloaded, installed and watched videos" using the App. Am. Compl. ¶ 45. The term "subscriber" is not defined by the VPPA. Accordingly, the "ordinary and plain meaning" of the word as it is "commonly understood" should be applied. *United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010) (quotation omitted).

Plaintiff is not a "subscriber" of Cartoon Network (and therefore not a "consumer" under the VPPA) as that term is commonly understood. He does not allege that he registered or otherwise signed-up with Cartoon Network. Nor does he allege that he was required to, or did, provide any personal information such as a name, email address or mailing address to Cartoon Network in order to use the App or watch videos. Indeed, nowhere in the Amended Complaint does Plaintiff allege that Cartoon Network even knows his identity. In short, he has no persistent

relationship with Cartoon Network that would differentiate him from any casual viewer of Cartoon Network's website or App. There is no precedent for the proposition that downloading and using a free app converts someone into a "subscriber" under the VPPA. In that regard, the case at hand differs markedly from *Hulu* where the court found that plaintiffs were "subscribers" in that they "signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services." *In re Hulu Privacy Litig.*, No. C 11-03674, 2012 WL 3282960, *7 (N.D. Cal. Aug. 10, 2012). Other than arguably viewing videos, none of the characteristics that made the *Hulu* plaintiffs subscribers are present here.

## III. PLAINTIFF HAS NOT PLEADED AN INJURY IN FACT

The Amended Complaint also should be dismissed for the independent reason that Plaintiff still has not alleged any actual, concrete, injury and thus lacks standing under Article III of the U.S. Constitution. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (noting that standing "is jurisdictional . . . [and] has the same effect as dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)"). Article III standing requires

> (1) an injury in fact, which is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To satisfy the injury in fact prong of Article III standing, a plaintiff must present specific, concrete facts showing that the challenged conduct will result in a demonstrable, particularized injury to the plaintiff. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 984 (11th Cir. 2005). This requirement "is a hard floor . . . that cannot be removed by statute." *Summers v. Earth Island Inst.,* 555 U.S. 488, 497 (2009). As the Supreme Court recently reiterated, "threatened injury must be certainly impending to constitute injury in fact . . . allegations of possible future injury are not sufficient" to establish standing. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal citations and quotations omitted).

Here, the allegations are insufficient to show an invasion of a right that adversely affected the Plaintiff. Plaintiff does not allege—let alone provide any facts showing—that Cartoon Network's purported disclosure of his Android ID to Bango identified him in any manner. Plaintiff does not allege that Cartoon Network disclosed his real name or any other information identifying him as a person to Bango (or even that Cartoon Network possessed such information in the first place). Likewise, Plaintiff does not allege that Bango in-fact used the 64-digit

Android ID number the App allegedly transmitted to Bango to identify him or anyone else in the putative class. Nor does Plaintiff allege any economic injury. Instead, Plaintiff merely suggests that because Bango **could, potentially**, use the 64-digit Android ID, in combination with various other unidentified sources of information, to one day theoretically identify Plaintiff or others in the putative class, Plaintiff and the Class "have had their statutorily defined right to privacy violated." Am. Compl. ¶ 54, ECF No. 23. Such speculative allegations are not sufficient to establish Article III standing for at least two reasons.

*First*, the VPPA should not be interpreted to support standing based on a mere statutory violation without concrete particularized harm. Other district courts have reached this conclusion. In *Sterk v. Best Buy Stores, L.P.*, No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012), the plaintiff brought an action against Best Buy claiming that it violated the VPPA by impermissibly sharing and retaining records of plaintiff's movie purchases. *Id.* at *1-2. After Best Buy moved to dismiss, the court held that plaintiff failed to allege injury-in-fact as required under Article III. *Id.* at *8. In doing so, the court expressly rejected plaintiff's argument that "a claim of violation of a statutory right under the VPPA alone is sufficient injury-in-fact to confer Article III standing," explaining that:

> None of the plaintiff's theories establish an injury-in-fact for his disclosure or retention claims under the VPPA. The SCA and the VPPA require a

plaintiff to be "aggrieved" meaning the individual has suffered an Article III injury-in-fact. Therefore, a plaintiff must plead an injury beyond a statutory violation to meet the standing requirement of Article III…. [W]hile Congress is permitted to expand standing to the extent permitted under Article III, Congress cannot abrogate the basic standing requirement that an individual suffer an actual redressable injury-in-fact.

*Id.* at *5 (internal citations omitted).

Courts within this circuit have found plaintiffs to lack standing in similar situations. In *Young v. West Publishing Corp.*, 724 F. Supp. 2d 1268 (S.D. Fla. 2010), plaintiffs claimed a legal publisher violated the DPPA's prohibition on disclosing drivers' personal information. Defendant sought dismissal on the ground that plaintiffs did not adequately allege an injury-in-fact. *Id.* at 1280-1.[8] The court agreed, holding that plaintiffs "failed to plea[d] any facts showing that West has disclosed the personal information for an impermissible use. Therefore, plaintiffs have failed to show that they have suffered an injury-in-fact." *Id.* at 1281.[9]

---

[8] The court determined that the claim warranted dismissal even though the DPPA provision providing for a private right of action is broader than the equivalent VPPA provision. The DPPA provision does not require the individual bringing the action be "aggrieved" like the VPPA. *See* 18 U.S.C. § 2724(a).

[9] Cartoon Network recognizes that the *Hulu* court took a more expansive view of actual injury. *See In re Hulu Privacy Litig.*, No. C 11-03674 LB, 2013 WL 6773794, *8 (N.D. Cal. Dec. 20, 2013). In *Hulu*, however, unlike here, the plaintiffs alleged that Hulu transmitted to third parties "information that identified Plaintiffs and Class Members personally" including Facebook IDs and Hulu IDs,

In reaching its decision, the *Young* court distinguished *Kehoe v. Fidelity Fed. Bank. & Trust*, 421 F.3d 1209 (11th Cir. 2005), which held that the DPPA permitted liquidated damages without actual damages.[10] The *Young* court explained that in contrast to *Kehoe* where the defendant "did not dispute that a violation of the DPPA occurred," in *Young*, not only was there no admission of a violation by defendant, but plaintiff had not identified an actual disclosure that had occurred. *Id.* at 1283. In doing so, the court stated that "the mere potential of improper disclosure sometime in the future does not constitute an injury." *Id. See also Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 12-80178-CIV, 2013 WL 5972173, *12 (S.D. Fla. Oct. 22, 2013) ("Congress can enact a statute . . . that puts into place a 'bounty' . . . for a plaintiff who assists in enforcing federal laws. However, there still must be an injury for the plaintiff to recover under the statute.")

---

which linked directly to their Hulu profile pages that included the users' names and locations, thus injuring them. *See In re Hulu Privacy Litig.*, No. C 11-03674, 2012 WL 3282960, *2 (N.D. Cal. Aug. 10, 2012). There are no such allegations in this case where Plaintiff contends only that Cartoon Network disclosed an anonymized device number without more.

[10] The *Young* court analyzed *Kehoe* in the context of ripeness. *Young*, 724 F. Supp. 2d at 1281-3. In doing so, the court explained that "[s]tanding and ripeness overlap to a certain degree because both doctrines look to the existence of actual injury to the plaintiff caused by the alleged wrong. Few courts draw meaningful distinctions between the two doctrines." *Id.* at 1282 (internal citations and quotations omitted).

***Second***, even if the VPPA supports standing based on a mere statutory violation, Plaintiff must allege that Cartoon Network's alleged disclosure personally identified him, and not just that such identification is theoretically possible or happened to others. As discussed above, here, Plaintiff does not do so. He does not allege that Cartoon Network provided information to Bango that identified him. Nor does he allege that Bango subsequently used the 64-digit Android ID the App allegedly transmitted to Bango to identify him. As such, he has not alleged an injury-in-fact that is concrete and particularized and actual or imminent. *See Lujan*, 504 U.S. at 560-61; *Clapper*, 133 S. Ct. at 1147. Given this fatal deficiency, Plaintiff's Amended Complaint should also be dismissed for lack of standing pursuant to Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, this Court should grant Cartoon Network's Motion to Dismiss the Amended Complaint with prejudice.

This 6th day of June, 2014.

  /s/ James A. Lamberth
James A. Lamberth (Ga. Bar No. 431851)
james.lamberth@troutmansanders.com
Alan W. Bakowski (Ga. Bar No. 373002)
alan.bakowski@troutmansanders.com
TROUTMAN SANDERS LLP
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia  30308-2256
(404) 885-3000 (voice)

Marc Zwillinger
(admitted *pro hac vice*)
<u>marc@zwillgen.com</u>
Jon Frankel
(admitted *pro hac vice*)
<u>jon@zwillgen.com</u>
Jeffrey Landis
(admitted *pro hac vice*)
<u>jeff@zwillgen.com</u>
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
(202) 706-5205 (telephone)

***Attorneys for Defendant The Cartoon
Network, Inc.***

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7.1(D), I hereby certify that the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CARTOON NETWORK INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT has been prepared in conformity with Local Rule 5.1.  This brief was prepared with Times New Roman (14 point) type.

This 6th day of June, 2014.

/s/ James. A. Lamberth
James A. Lamberth

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2014, I electronically filed the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

CARTOON NETWORK INC.'S MOTION TO DISMISS PLAINTIFF'S

AMENDED CLASS ACTION COMPLAINT with the Clerk of Court using the

CM/ECF system, which will send a notice of electronic filing to the following

counsel of record:

> Jennifer Auer Jordan
> THE JORDAN FIRM, LLC
> Suite 880
> 1447 Peachtree Street, N.E.
> Atlanta, GA 30309
>
> Benjamin H. Richman
> Rafey S. Balabanian
> James Dominick Larry
> EDELSON PC
> 350 North LaSalle Street, Suite 1300
> Chicago, IL 60654

This 6th day of June, 2014.

> /s/ James. A. Lamberth
> James A. Lamberth
> Georgia Bar No. 431851
> TROUTMAN SANDERS LLP
> 600 Peachtree Street, N.E., Suite 5200
> Atlanta, Georgia  30308-2256
> (404) 885-3000 (voice)
> (404) 962-3900 (facsimile)