IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARK ELLIS, individually and on
behalf of all others similarly situated,

      *Plaintiff*,

      *v*.

THE CARTOON NETWORK, INC., a
Delaware corporation,

      *Defendant*

Case No. 1:14-cv-00484-TWT

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................ 1

**FACTUAL AND PROCEDURAL BACKGROUND** ........................................... 3

**ARGUMENT** ................................................................... 5

**I.    Ellis Alleges that Cartoon Network Disclosed His PII By
        Transmitting Data to Bango that Identified Him as Viewing
        Specific Video Materials** .............................................. 7

    **A.    The VPPA's Definition of PII is Broad, and the Context-
            Based, Case-by-Case Analysis it Requires Supports the
            Conclusion that Ellis's Android ID and Video Viewing
            History are PII** ................................................... 7

    **B.    The Context of Cartoon Network's Disclosures: Ellis
            Alleges Sufficient Facts to Suggest that the Android ID and
            Video Viewing History Disclosed by Cartoon Network is
            PII in this Case** .................................................. 10

    **C.    Cartoon Network's Cited Authorities Do Not Warrant
            a Finding that Its Disclosures Were Not Personally
            Identifying** ....................................................... 12

**II.   Ellis is a "Consumer" Entitled to the VPPA's Protections
        Because He Downloaded, Installed, and Used the App to View
        Video Content** ......................................................... 18

**III.  Ellis Suffered an Injury in Fact in the Form of Cartoon
        Network's Disclosure of his PII to Bango and Therefore, has
        Standing to Sue** ....................................................... 21

    **A.    Cartoon Network's Violation of Ellis's Statutorily Created
            Privacy Rights Under the VPPA is Alone Enough to
            Establish Standing** ................................................ 22

    **B.    Because Ellis Pleads that He *Was* Personally Identified by**

Cartoon Network's Disclosures, Rather than that Such Identification Was Possible, his Injuries are Actual Rather than Speculative, and He Has Standing to Sue ........................ 27

**CONCLUSION** ................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES SUPREME COURT CASES:**

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) .................................. 5

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ........................................... 22

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................... 23

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .......................... 22, 23

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) .............................. 23, 25

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................. 27, 28

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) ............................... 28

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Grossman v., N.A.*, 225 F.3d 1228 (11th Cir. 2000) ............................... 5, 13

*Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*,
    104 F.3d 1256 (11th Cir. 1997) ........................................................... 5

*United States v. Frank*, 599 F.3d 1221 (11th Cir. 2010) ............................ 18

*Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713 (10th Cir. 2004), ......... 14

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013) ......... 22

*In re Carter*, 553 F.3d 919  (6th Cir. 2009) ............................................. 22

*Graczyk v. West Pub. Co.*, 660 F.3d 275 (7th Cir. 2011) ........................... 24

*Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289 (7th Cir. 2000) ........... 22, 25

**UNITED STATES DISTRICT COURT CASES:**

*Lane v. Wells Fargo Bank, N.A.*, 2010 WL 2724084 (N.D. Ga. July 7, 2010) .. 5, 10

*Terrell v. U.S.*,
    No. Civ.A 104CV2170EJC, 2005 WL 3262966 (N.D. Ga. Nov. 30, 2005) .. 6

*Citarella v. Goldleaf Fin. Solutions, Inc.*,
    No. 08-cv-2204, 2009 WL 3029760 (N.D. Ga. 2009) .................................. 6

*In re Hulu Privacy Litig.*,
    No. 11-cv-3764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........... *passim*

*Viacom Int'l v. YouTube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008) ........................... 14,

*Klimas v. Comcast Cable Comm'ns., Inc.*,
    No. 02-cv-72054, 2003 WL 23472182 (E.D. Mich. July 1, 2003) .. 15, 16, 24

*Johnson v. Microsoft*,
    No. 06-cv-900, 2009 WL 179440 (W.D. Wash. June 23, 2009) ................. 16

*Mollet v. Netflix Inc.*,
    No. 11-cv-01629, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) ............... 18

*See In re Hulu Privacy Litig.*,
    No. 11-03764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .............. 19, 20

*Kean for Cong. Comm. v. Fed. Election Comm'n*,
    398 F. Supp. 2d 26 (D.D.C. 2005) ............................................................ 23

*In re Hulu Privacy Litig.*,
    No. 11-cv-3764, 2013 WL 6773794 (N.D. Cal. Dec. 20, 2013) ...... 23, 24, 26

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011)......................................................... 24

*Sterk v. Best Buy Stores, L.P.*,
    No. 11-cv-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012).............. 25, 26

*Sterk v. Redbox Automated Retail, LLC*,
    No. 11-cv-1729, 2012 WL 3006674 (N.D. Ill. July 23, 2012).................... 26

*Sterk v. Redbox Automated Retail, LLC*,
    No. 11-cv-1729, 2013 WL 4451223 (N.D. Ill. Aug. 16, 2013)................... 26

*Palm Beach Golf Ctr.-Boca, Inc., v. Sarris*,
    12-80178-civ, 2013 WL 5972173 (S.D. Fla. Oct. 22, 2013)....................... 28

## STATUTES:

Fed. R. Civ. P. 12............................................................................................*passim*

18 U.S.C.A. § 2710..........................................................................................*passim*

## MISCELLANEOUS:

S. Rep. No. 100-599 (1988)....................................................................... 8, 20, 24

Oxford Dictionaries, http://www.oxforddictionaries.com/definition/english/ subscribe ... 19

Encyclopedia.com, http://www.encyclopedia.com/topic/subscribe.aspx (last
    accessed June 23, 2014); *subscribing*........................................................... 19

FindMe Words, http://www.findmewords.com/definition-of-subscribing.html .... 19

Cartoon Network, *Terms of Use*, CartoonNetwork.com,
    www.cartoonnetwork.com/legal/termsofuse.html................................. 20, 22

Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881 (1983) ........................... 22

## INTRODUCTION

In addition to its cable television channel, Defendant Cartoon Network, Inc. ("Cartoon Network") distributes an Android mobile device application (the "App") through which consumers can watch clips and episodes of their favorite Cartoon Network shows. Unfortunately for those App users, however, each time they watch a video through the App, Cartoon Network discloses their unique Android ID (a randomly generated 64-digit number that serves to identify a particular user account on an Android device) and video viewing histories to third party analytics company Bango PLC ("Bango"). From there, Bango associates the Android IDs with numerous other pieces of information—including usernames, email addresses, and other identifiers—to identify individuals as having viewed specific video materials.

Plaintiff Mark Ellis ("Ellis") alleges that he subscribed to the App and that his Android ID and video viewing history were disclosed without his authorization. As a result, he filed his Amended Complaint ("Complaint") on behalf of himself and all other users of the App, alleging that Cartoon Network violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, which expressly prohibits such disclosures of personally identifiable information ("PII").

Cartoon Network now seeks dismissal of Ellis's Complaint on the basis of

1

three arguments. First, it argues that Ellis fails to state a claim because the Android IDs disclosed to Bango do not identify specific individuals and therefore, are not PII as contemplated by the VPPA. Second, it argues that Ellis is not a "subscriber" of the App and therefore is not a "consumer" protected by the VPPA. And finally, Cartoon Network asserts that Ellis failed to allege that he suffered an injury-in-fact sufficient to confer Article III standing to sue. Each of these challenges fails.

First, Ellis's Complaint details how, as part of its core business, Bango links Android IDs with email addresses, third party identities, location information, payment information, and demographic details to identify and track consumers across multiple devices and platforms. As a result, Bango received data from Cartoon Network that identified Ellis as having viewed specific video materials.

Second, under the relevant authority and common, "plain meaning" usage, Ellis alleged that he was a "subscriber" by establishing that he downloaded, installed, and used the App to view video content. In fact, Cartoon Network's own Terms of Use characterize users such as Ellis as "subscribers" to its services.

Finally, by alleging that Cartoon Network violated his right to privacy in his video viewing records, Ellis alleges an injury-in-fact sufficient to grant him Article III standing to sue. He was not, as Cartoon Network contends, required to allege anything further. For these reasons and as explained further below, the Court

should deny Cartoon Network's motion in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Cartoon Network, best known for its cable television channel, also offers its Cartoon Network App for use on mobile devices such as Android smartphones. (Compl. ¶ 1.)[1] Through the App, consumers can "see videos from hit Cartoon Network shows[,]" and more. (*Id.* ¶ 9.) The App never seeks or obtains subscribers' consent to share or otherwise disclose their personally identifiable information ("PII"). (*Id.* ¶ 11.)

Each time a subscriber—including Ellis—viewed a video clip or television show on the App, however, the App (upon closing) sent a record of that video viewing activity to Bango. (*Id.* ¶ 12.) Bango's business model is focused on "tracking individual user behaviors across the Internet and mobile applications." (*Id.* ¶ 12 n.3.) According to Bango, its "technology 'reveals customer behavior, engagement and loyalty across and between all [of a company's] websites and apps.'" (*Id.*) To track user activity across multiple platforms, Bango relies on "[o]perator and device manufacturer supplied identit[ies]," including Android ID,

---

[1]    This case involves only the version of the App available to users of Android smartphones. Thus, any reference herein to "the App" refers to the Android version of the Cartoon Network App, and any reference to "users" refers to users of the Android version of the App.

which identifies specific device users. (*Id.* ¶¶ 14–18.)

The records Cartoon Network disclosed to Bango included the title of each video the user watched, as well as the user's unique Android ID. (*Id.* ¶¶ 12–18.) Ellis alleges that upon receiving Android IDs, Bango identified specific individuals, and associated them with specific telephone numbers, IP addresses, locations, payment details and histories, email addresses, third party and open identities, and other demographic data. (*Id.* ¶ 19, 21.) Bango, as part of its central business, then used the Android ID to track users' activities (including video viewing activities) and attribute a "name[], address[], and billing information[] to" each user. (*Id.* ¶¶ 15–20, 24.)

For his part, Plaintiff Mark Ellis downloaded and began using the Cartoon Network App in early 2013 to watch videos on his Android smartphone. (Compl. ¶ 32.) At no point did Ellis grant Cartoon Network permission to disclose his PII to any third party analytics company, including Bango. (*Id.* ¶ 33.) His lack of consent notwithstanding, Cartoon Network disclosed Ellis's PII (in the form of his video viewing history and his Android ID) to Bango each time he watched a video clip on the App. (*Id.* ¶¶ 12, 21, 35.)

On May 16, 2014, Ellis filed his First Amended Complaint, alleging that Cartoon Network's disclosure of his PII without his consent violated the Video

4

Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. (Dkt. 23.) Cartoon Network now moves to dismiss under Federal Rules 12(b)(1) and 12(b)(6). (Dkt. 26.)

## ARGUMENT

On a Rule 12(b)(6) motion to dismiss, the "court is required to accept as true 'all facts set forth in the plaintiff's complaint,'" and it "must draw all reasonable inferences in the light most favorable to the plaintiff." *Lane v. Wells Fargo Bank, N.A.*, No. 10-cv-1411, 2010 WL 2724084, at *1 (N.D. Ga. July 7, 2010) (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)). To survive a Rule 12(b)(6) motion, a complaint need not plead "[s]pecific facts," but instead, must only contain a statement of the claim in question that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

Under Rule 12(b)(1), "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: (1) facial attacks, and (2) factual attacks." *Terrell v. U.S.*, No. Civ.A 104CV2170EJC, 2005 WL 3262966, at *2 (N.D. Ga. Nov. 30, 2005). "Facial attacks on a complaint," like Cartoon Network's

here, "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in plaintiff's complaint are taken as true for the purposes of the motion." *Terrell*, 2005 WL 3262966, at *2 (internal citations and quotations omitted). As on a Rule 12(b)(6) motion, the Court must accept the Plaintiff's allegations as true and draw all reasonable inferences in his favor. *Citarella v. Goldleaf Fin. Solutions, Inc.*, No. 08-cv-2204, 2009 WL 3029760, at *1 (N.D. Ga. 2009).

Here, Cartoon Network makes three arguments in favor of dismissal. First, that the information it disclosed was not PII. Second, that Ellis is not a "subscriber" to its services and therefore is not a "consumer" protected by the VPPA. And third, that Ellis fails to allege any injury and therefore lacks standing to sue. As explained below, each argument fails: Cartoon Network's disclosures allowed Bango to identify Ellis as having viewed specific video materials, satisfying the VPPA's definition of PII; Ellis was a "subscriber" to Cartoon Network's services because he downloaded, installed, and used the App to view videos; and Ellis alleges that he was aggrieved by Cartoon Network's invasion of his privacy rights and therefore—consistent with decades of Supreme Court and appellate precedent—he has standing to sue.

Accordingly, Cartoon Network's motion should be denied and Ellis should

6

be allowed to pursue his claim.

**I.    Ellis Alleges that Cartoon Network Disclosed His PII By Transmitting Data to Bango that Identified Him as Viewing Specific Video Materials.**

Cartoon Network first seeks dismissal for Ellis's supposed failure to state a claim under the VPPA, arguing that Ellis's 64-digit Android ID and video viewing history are incapable of identifying him as an individual and thus, do not constitute PII under the VPPA. Cartoon Network is wrong.

A.    The VPPA's Definition of PII is Broad, and the Context-Based, Case-by-Case Analysis it Requires Supports the Conclusion that Ellis's Android ID and Video Viewing History are PII.

The VPPA defines "personally identifiable information" (or "PII") as "*includ[ing]* information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). That definition does not limit PII to traditional methods of identification like names and addresses, but instead, "plainly encompasses other means of identifying a person." *In re Hulu Privacy Litig.*, No. 11-cv-3764, 2014 WL 1724344, at **7, 11 (N.D. Cal. Apr. 28, 2014) ("*Hulu*").

While Cartoon Network contends that "there is no precedent for treating a number like the 64-digit Android ID as PII under the VPPA.'" (Motion to Dismiss Plaintiff's Amended Class Action Complaint, Dkt. 26 ("MTD") at 18), it is mistaken. Rather, the Northern District of California recently and comprehensively

analyzed the meaning of "personally identifiable information" under the VPPA and found that the statutory language, legislative history, and case law confirm that a video viewing history tied to a unique identifier—like an Android ID—could constitute PII. *See Hulu*, 2014 WL 1724344 at *13.

The *Hulu* court began by recognizing that the VPPA does not expressly address whether unique user IDs constitute PII. *See id.* at *7. Thus, it turned to the legislative history to determine Congress' intent in enacting the VPPA, which, simply put, was "'[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials.'" *Id.* at *8 (citing S. Rep. No. 100-599, at 2 (1988)). As Senator Patrick Leahy explained,

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read . . . In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch . . . . I think that is wrong . . . and I think it is something that we have to guard against.

S. Rep. No. 100-599, at 5–6. The *Hulu* court also noted that the Senate Report includes a section-by-section analysis of the VPPA, explaining that, "[u]nlike the other definitions in this subsection, [the definition of the term 'personally identifiable information'] uses the word 'includes' to establish a minimum, but not

exclusive, definition of personally identifiable information." *Hulu*, 2014 WL 1724344 at *11. In that light, the court concluded that the VPPA does not limit identification of individuals merely to traditional methods like "a name necessarily." *Id.* ("One can be identified in many ways: by a picture, by pointing, by an employee number, by the station or office or cubicle where one works, by telling someone what 'that person' rented."). Instead, "the statute, the legislative history, and the case law . . . require the identification of a specific person tied to a specific transaction, and support the conclusion that [although] a unique anonymized ID alone is not PII . . . *context could render it not anonymous and the equivalent of the identification of a specific person.*" *Id.* (emphasis added).

Accordingly, the court ruled that where, as here, a video service provider (like Cartoon Network) discloses a unique identifier (like an Android ID) and video history to a third party (like Bango), which uses that information to identify a specific individual and the video materials that person viewed, the information disclosed is PII. *Id.* at *11 ("One could not skirt liability under the VPPA, for example, by disclosing a unique identifier and a correlated look-up table.").[2]

---

[2]     Importantly, the *Hulu* decision was on summary judgment, where the plaintiffs were no longer entitled to the presumption that their allegations were correct, and instead were required to produce evidence that the disclosures at issue identified them specifically. It was for this reason—a lack of evidence that a

B.  The Context of Cartoon Network's Disclosures: Ellis Alleges
Sufficient Facts to Suggest that the Android ID and Video Viewing
History Disclosed by Cartoon Network is PII in this Case.

Turning to the context of the disclosures in this case, Cartoon Network makes several attacks on Ellis's allegations. First, it argues that Ellis fails to allege that he was in fact "identified" by Bango, and instead only alleges that he *could* have been identified. (MTD at 16.) That argument, however, ignores the plain allegations of the Complaint, where Ellis alleges that the information disclosed by Cartoon Network actually identifies *him* as having viewed specific video materials. (*See* Compl. ¶¶ 24, 25, 35, 48, 49.) Specifically, he alleges that Cartoon Network disclosed his unique 64-digit Android ID and the titles of the videos he viewed in the App to third-party analytics company Bango, (*Id.* ¶ 12.)

From there, Ellis details how Bango's business model specifically involves collecting and utilizing Android IDs "because [they] can be precisely linked to an individual person, and the person cannot avoid being tracked while using the

---

unique identifier had actually been tied to them specifically—that the *Hulu* Court ultimately granted summary judgment as to two types of disclosures made. *See Hulu*, 2014 WL 1724344, at **12–13. Here, by contrast, Plaintiff's allegations that Bango actually identified him and the other Class members, (Compl. ¶¶ 12, 15–18, 21, 22, 44), must be taken as true, and can also be plausibly inferred from the nature of Bango's business (i.e., identifying specific consumers using persistent identifiers such as Android IDs (*Id.* ¶¶ 13–19)). *See Lane v. Wells Fargo Bank, N.A.*, No. 10-cv-1411, 2010 WL 2724084, at *1.

device." (*Id*. ¶ 17.) Namely, Ellis explains how Bango links Android IDs—which are user-specific—to other categories of identifying information (including Web IDs, Network IDs, browser types, locations, activity and purchase histories, third party identities (i.e., Facebook IDs and others), "open identities," email addresses, and demographic information). (Compl. ¶ 18.) Ellis therefore alleges that Bango uses this information to tie each Android ID to "an identified person," like himself.

Going a step further, Ellis then alleges that Bango in fact uses the Android ID supplied with his viewing history *as an identifier* (*id*. at ¶¶ 16, 48), and that by using these identifiers in the same way with respect to other consumers, Bango "automatically identif[ies] hundreds of millions of consumers as they act across the internet." (*Id*. ¶¶ 22, 48.) Thus, contrary to Cartoon Network's contentions, Ellis actually alleges that Bango's "automatic identification" actually identified *him* as having viewed specific video materials, each time the App transmitted his Android ID and viewing history to Bango. (*Id*. ¶¶ 12, 48.)

Notwithstanding, Cartoon Network argues that even if Bango did identify Ellis, Cartoon Network's disclosure, when it took place, was not personally identifying. (MTD 17–18.) But, that ignores that Cartoon Network "could not" for example "skirt liability under the VPPA . . . by disclosing a unique identifier and a correlated look-up table." *Hulu*, No. 11-cv-03764, 2014 WL 1724344, at *11.

Indeed, because Bango "automatically" identifies specific individuals like Ellis by their Android IDs (which is part of its core business, (Compl. ¶¶ 15–19, 48.)), Cartoon Network cannot disclose Android IDs and video viewing histories to Bango without running afoul of the VPPA.[3]

In light of the foregoing, it should be clear that Ellis alleges that when Cartoon Network disclosed his Android ID and video viewing history to Bango, Bango received much more than a "unique, anonymous identifier." *Hulu*, 2014 WL 1724344, at *14. Rather, Bango received (and Cartoon Network disclosed) information that "personally identified" him as hav`ing viewed specific video materials. At this stage in the proceedings, nothing more need be pleaded.

C.   Cartoon Network's Cited Authorities Do Not Warrant a Finding that Its Disclosures Were Not Personally Identifying.

None of Cartoon Network's cited authorities require a different result. First, Cartoon Network's reliance on the "reverse engineering" language in *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) is misplaced. In *Low*, the plaintiffs alleged only that "third parties [could] *theoretically* de-anonymize a

---

[3]   Notably, in light of Bango's public statements regarding its use of Android IDs, Cartoon Network's contractual and business relationship with Bango, and Cartoon Network's non-opposition on the "knowingly" element of Ellis's claim, Cartoon Network's knowledge that it was disclosing PII to Bango through its App can be inferred at this stage. *See* 18 U.S.C. § 2710(b)(1).

user's LinkedIn ID number," while failing to allege "that anyone ha[d] actually done so, or what information precisely [] these third parties ha[d] obtained." *Id.* at 1025. To be clear, as the *Hulu* court noted, *Low* did "not alter the conclusion that a unique anonymized ID could be PII if other evidence renders it the equivalent of identifying a specific person." *Id.*

Unlike the plaintiffs in *Low*, who only speculated that third parties had the capacity to re-identify their data, Ellis here alleges not only that Bango *does* use Android IDs to identify specific individuals, but that such identification is the crux of Bango's business. (Compl. ¶¶ 15–19.) Ellis even goes further by explaining *how* Bango is able to identify individuals such as himself using their Android IDs. (Compl. ¶¶ 16, 17 (Bango uses Android IDs to track mobile app users because they be precisely linked to each Android device and user and the user cannot avoid being identified and tracked while using their Android device); *id.* ¶¶ 21–24 (using this method, Bango, "[n]o matter what connection or device a user is on . . . is able to identify users visiting [] mobile pages[]" and attribute names, addresses, and billing information to those users, just as it did with Ellis using the information provided by the App).)[4]

---

[4]    The *Hulu* Court also pointed out that in *Low*, the Court "simply noted that the transmission of code was not the 'serious invasion' of a protected property

Similarly, Cartoon Network offers *Viacom Int'l v. YouTube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008) for the proposition that a unique identifier cannot actually identify a specific person. (MTD at 14.) As with its other arguments, however, the *Hulu* court already addressed that misstatement of *Viacom*'s holding:

> What was at issue [in *Viacom*], however, was not the users' identities. Instead, because the case was a copyright case against YouTube, what mattered was the number of times the users viewed particular videos. [*Viacom*, 253 F.R.D. at 262.] YouTube "did not refute that the login ID is an anonymous pseudonym that users create for themselves when they sign up with YouTube which *without more* cannot be identify specific individuals" *Id.* at 262. (emphasis added). The Court dismissed YouTube's privacy concerns as speculative and ordered discovery. *Id.*
>
> That result makes sense: the case was about discovery to establish copyright damages, not consumers' identities. The consumer identities were not relevant. Indeed, Viacom issued a press release that the parties would anonymize the data before disclosure to address YouTube users' privacy concerns. [Citation omitted.] Also, the decision does not provide enough of a factual context to determine whether the user IDs in *Viacom* identified a person or were anonymized. The case's holding is relevant only to the extent that it recognizes that unique anonymous IDs do not necessarily identify people.

*Hulu*, 2014 WL 1724344, at **9–10.

Cartoon Network next relies on *Pruitt v. Comcast Cable Holdings*, 100 F.

---

interest" required to state a privacy claim under the California Constitution. *Hulu*, 2014 WL 1724344, at *11. Here, as in *Hulu*, the VPPA protects the specific interest (video privacy) at issue.

App'x 713 (10th Cir. 2004), for the proposition that device identifiers are not PII. In *Pruitt*, however, the court held that because the information at issue—unique anonymous identifiers stored in Comcast cable boxes—had not been combined with the identifying information from Comcast's own databases, it was not "personally identifying." *Id.* Thus, while "*Pruitt* stands for the proposition that an anonymous, unique ID *without* more does not constitute PII . . . it also suggests that if an anonymous, unique ID were disclosed to a person who could understand it, that might constitute PII." *Hulu*, 2014 WL 1724344, at *11 (emphasis in original) (citing *Pruitt*, 100 F. App'x. at 716). The receiving party here, Bango, can *and does* identify specific individuals by Android ID, (Compl. ¶¶ 15–19), and therefore *Pruitt* is inapposite as well.

Cartoon Network's reliance on cases involving the disclosure of IP addresses is also misplaced. (*See* MTD at 15–16) (citing *Klimas v. Comcast Cable Comm'ns., Inc.*, No. 02-cv-72054, 2003 WL 23472182 (E.D. Mich. July 1, 2003) *aff'd on other grounds*, 465 F.3d 271 (6th Cir. 2006); *Johnson v. Microsoft*, No. 06-cv-900, 2009 WL 179440, at *4 (W.D. Wash. June 23, 2009)). In *Klimas*, for instance, the court held that:

> [A] dynamic IP address cannot constitute PII . . . . Unlike a home address, which *for the most part* stays constant, a dynamic IP address is more like a hotel room number. Dynamic IP addresses constantly change and unless an IP address is correlated to some other

15

> information, such as Comcast's log of IP addresses assigned to its
> subscribers (or a hotel registry in the analogy of hotel room numbers),
> it does not identify a single subscriber by itself.

*Id.* at *5 (emphasis added). Likewise, in *Johnson*, the court recognized that many Internet service providers "assign dynamic IP addresses that change each time the user connects to the Internet." 2009 WL 179440, at *4. Ultimately, the *Johnson* court held that IP addresses alone, without "matching [them] to a list of a particular Internet service provider's subscribers," did not constitute PII within the meaning of the privacy policy in question. *Id*.

The Android IDs in this case are not dynamic, but rather "for the most part stay[] constant" with a user, *see Klimas*, 2003 WL 23472182, at *5, and thus are more like home addresses than hotel rooms, to extend the *Klimas* analogy. Indeed, like home addresses, while Android IDs may change periodically through one's life and later be used by others, they are generally considered identifying during the pendency of an individual's use. (Compl. ¶¶ 15–19.) Put another way, IP addresses regularly change and are accordingly used only to identify a specific computer at a specific time, whereas Android IDs are static and for that very reason are used by entities like Bango to identify specific individuals at specific times across multiple services. (Compl. ¶¶ 15–19.)

Finally, Cartoon Network points to the Android Development Guide

referenced in Ellis's Complaint to argue that the App would not be able to distinguish between multiple users on the same device. (MTD at 8–9.) In so doing, it asserts that separate users will not have separate Android IDs because users must first "explicitly modify" some default setting. (*Id.*) Not true. The "explicit[] modif[ication]" refers to the fact that certain settings on the Android device can "not be modified directly by applications," but instead are only changed when the user takes some action, such as creating a new user account (which will, by default, create a new Android ID). (Dkt. 26-2 at 4; *see also* Compl. ¶ 17.) Plaintiff's interpretation is confirmed by the guide itself, which notes that when multiple users exist on a device, "[f]rom [the] app's point of view, each user is running on a completely separate device." (Dkt. 26-1 at 24.) If nothing else, the Parties' dispute over the Android Developer guide confirms that the context-dependent, fact-intensive determination of whether the information disclosed is PII is inappropriate for resolution on a Rule 12 motion.[5]

---

[5]     Cartoon Network also cites *Mollet v. Netflix Inc.* (No. 11-cv-01629, 2012 WL 3731542, *4 (N.D. Cal. Aug. 17, 2012)) to argue that "Congress [did not] intend[] to prevent every conceivable manner in which a third-party might gain access to a consumer's PII." Plaintiff makes no such argument (obviously, as the statute itself provides for several instances where such access is appropriate, *see* 18 U.S.C. § 2710(b)(2)). But *Mollet* has no relevance where, as here, a plaintiff properly pleads each element of his VPPA claim and establishes that this type of disclosure is of the sort Congress sought to prevent. *See* S. Rep. 100-599 at 5–6.

\*                    \*                    \*

For these reasons and as alleged in the Complaint, the Android IDs disclosed by Cartoon Network allowed Bango to identify specific individuals, including Ellis, as having viewed specific video materials, and are therefore, PII.

## II. Ellis is a "Consumer" Entitled to the VPPA's Protections Because He Downloaded, Installed, and Used the App to View Video Content.

Cartoon Network next argues that Ellis cannot state a claim because he is not a "consumer" as required by the VPPA. The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video service provider[.]" 18 U.S.C. § 2710(a)(1). The VPPA does not, however, define "subscriber." *See* 18 U.S.C. § 2710(a). As such, the Court must interpret the term as it is "commonly understood" and by using its "ordinary and plain meaning." *United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010).

In the context of online services such as the App, "subscribe" is defined to include "[a]n arrangement by which access is granted to an online service."[6]

---

[6]      *See*, *e.g.*, *subscribe (1.1)*, Oxford Dictionaries, http://www.oxforddictionaries.com/definition/english/subscribe (last accessed June 23, 2014); *subscribe*, Encyclopedia.com, http://www.encyclopedia.com/topic/subscribe.aspx (last accessed June 23, 2014); *subscribing (2)*, FindMe Words, http://www.findmewords.com/definition-of-subscribing.html (last accessed June 23, 2014) ("[A]rrange for access to an electronic mailing list or service.").

Another decision from the *Hulu* Court confirms this reading. *See In re Hulu Privacy Litig.*, No. 11-03764, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012) (finding a subscriber relationship where the plaintiffs alleged that they were "subscribers" and that "[t]hey visited hulu.com and viewed video content," "regardless of whether they were registered and logged in.").

Here, Ellis's allegations fit the common usage of "subscribe" as used in the online and mobile context. Ellis alleges that he downloaded the App (thereby entering into an agreement with Cartoon Network to provide him streaming video through the App) and did in fact request and receive video content from Cartoon Network through the App. (Compl. ¶¶ 32, 45.) Like the plaintiffs in *Hulu*, then, Ellis used a video streaming service—provided by Cartoon Network— to view video content. (*Id*. ¶ 32.) But, instead of streaming the content from a website, Ellis committed to his subscription by downloading the App and utilizing it on his Android-based mobile device. (*Id*. ¶ 46.) Thus, Ellis is a subscriber under the plain meaning of the word because he downloaded, installed, and used the app offered by the Defendants to watch videos. *See In re Hulu Privacy Litig.*, 2012 WL 3282960, at *8; *see also* note 6, *supra*. In fact, Cartoon Network itself embraces the same usage of the term, by referring to users of its mobile apps as "subscribers" or "account holders" within its own Terms of Use. *See* Cartoon Network, *Terms of*

19

*Use*, CartoonNetwork.com, www.cartoonnetwork.com/legal/termsofuse.html (last accessed June 23, 2014).[7]

Finally, it bears noting that while Cartoon Network bemoans the supposed lack of precedent for Plaintiff's position that he is a "subscriber," Cartoon Network itself commits the same error, and offers no precedent in favor of its position that a person who downloads, installs, and views video content on a mobile application has not "subscribed" to the application provider's services. In fact, while Cartoon Network contends that the common usage of "subscribe" defeats Plaintiff's claim, it does not offer a single definition or example of usage in support, much less a definition or example that defeats Plaintiff's position. (*See* MTD at 19.)

Accordingly, under the facts alleged, Ellis is a "subscriber" (and therefore a

---

[7]     Cartoon Network relies upon the same *Hulu* case, and nothing more, to support its contention that Ellis is not a "subscriber." Cartoon Network claims that the *Hulu* court found plaintiffs to be subscribers because they "signed up for a Hulu account, *became registered users*, *received a Hulu ID*, *established Hulu profiles*, and used Hulu's streaming services." (MTD 20 (quoting *In re Hulu Privacy Litigation*, 2012 WL 3282960, at *7 (emphasis added).)
Cartoon Network either misstates or misreads *Hulu*—the quoted language is not from the Court's holding, but rather from its recitation of *the plaintiffs' argument*. *See In re Hulu Privacy Litig.*, 2012 WL 3282960 at *7. ("*Plaintiffs respond* that they signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services. Opposition, ECF No. 58 at 13.") (emphasis added).) That court actually *held* that the plaintiffs were "subscribers" because "[t]hey visited hulu.com and viewed video content," and noted that "their data [was] tracked regardless of whether they were registered and logged in." *Id.* at *8.

"consumer") as that term is commonly used, because he downloaded, installed, and used a service (the App) provided by Cartoon Network.

**III.  Ellis Suffered an Injury in Fact in the Form of Cartoon Network's Disclosure of his PII to Bango and Therefore, has Standing to Sue.**

Cartoon Network next contends that Ellis lacks Article III standing to sue because he has does not allege that he suffered any "injury in fact" as a result of its alleged conduct. In particular, Cartoon Network argues that (i) the VPPA does not confer standing based on "a mere statutory violation" like that alleged by Ellis (MTD at 22), and (ii) that even if it does, Ellis failed to allege anything beyond the speculative possibility that he could be identified, rather than alleging that Cartoon Network's disclosures did in fact lead to his identification. (MTD at 25.) Each of those arguments misses their mark.

    A.    <u>Cartoon Network's Violation of Ellis's Statutorily Created Privacy Rights Under the VPPA is Alone Enough to Establish Standing.</u>

As an initial matter, it is hornbook law that violation of a statutorily created right, without more, can be the "injury in fact" sufficient to confer Article III standing. The Supreme Court has consistently held that "Congress can enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Havens Realty*

*Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330–1334 (11th Cir. 2013).[8] "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500; *see also In re Carter*, 553 F.3d 919, 988 (6th Cir. 2009) ("Congress no doubt has the power to create new legal rights, and it generally has the authority to create a right of action whose only injury-in-fact involves the violation of that statutory right").

Here, the VPPA expressly confers a right to privacy in the viewing of video materials, and a right of enforcement on any "person aggrieved by any act of a person in violation of" its provisions. 18 U.S.C. § 2710. Where, as here, a statute confers a substantive right and provides that a "person aggrieved" by its violation may sue, such a person has "suffer[ed] an injury 'in precisely the form the statute was intended to guard against.'" *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 298 (7th Cir. 2000) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1975)); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 19–20 (1998)

---

[8]   *See also* Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 885 (1983) ("Standing requires . . . the allegation of some particularized injury to the individual plaintiff. But legal injury is by definition no more than the violation of a legal right; and legal rights can be created by the legislature.").

("History associates the word 'aggrieved' with a congressional intent to cast the standing net broadly—beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested."); *Kean for Cong. Comm. v. Fed. Election Comm'n*, 398 F. Supp. 2d 26, 36 (D.D.C. 2005) ("[Defendant's] argument that plaintiff needs an additional injury, beyond" the right conferred by statute "would completely eviscerate *Akins*.").

The *Hulu* court recently confirmed that no injury beyond disclosure is necessary for standing to assert a VPPA claim. Beginning with the VPPA's text, the court noted that subsection (b) of the VPPA "refers to the 'aggrieved person' in the singular and precedes it with a definite article." *In re Hulu Privacy Litig.*, No. 11-cv-3764, 2013 WL 6773794, at *5 (N.D. Cal. Dec. 20, 2013). "Thus, the 'aggrieved person' is the consumer whose information was disclosed.'" *Id.* Rejecting the argument that a plaintiff must show some injury beyond disclosure, the *Hulu* court noted further that "[s]ubsection (b) does not refer to 'an aggrieved person' or 'any person aggrieved.' The consumer, therefore, is 'aggrieved' based solely on the disclosure of personally identifiable information to third parties and the video tape service provider is liable to that 'aggrieved person' for the relief in

subsection (c)." *Id.*[9]

From this, the *Hulu* court recognized that "[t]he plain language of the statute shows that Congress considered a customer to be an 'aggrieved person' under the VPPA if a video tape service provider wrongfully discloses that consumer's personally identifiable information."

> The "any aggrieved person" language in subsection (c) establishes that any person who meets the definition of "the aggrieved person" in subsection (b)(2) (which demonstrated an injury in-fact for Article III standing purposes) "may bring" a federal lawsuit. 18 U.S.C. § 2710(c)(1). The Court then "may award actual damages but not less than liquidated damages of $2,500." *Id.* § 2710(c)(2). Nothing in subsection (c) (or any other part of the statute) requires an injury beyond a violation of subsection (b).

*In re Hulu Privacy Litig.*, 2013 WL 6773794, at *5.[10]

---

[9]    The Senate Report also makes clear that "[i]n the event of an unauthorized disclosure, an individual may bring a civil action for damages," without any additional prerequisite to suit. S. Rep. 100-599, at *7.

[10]    Other courts throughout the country have also routinely applied these principles to determine that violations of other consumer privacy statutes that authorize private lawsuits, like the VPPA, are sufficient to confer standing. *See, e.g., Graczyk v. West Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011) (finding no monetary harm necessary to state a claim under the Driver's Privacy Protection Act, as "Congress has defined the relevant injury under the DPPA as 'obtain[ment], disclos[ure], or [use]'") (citation omitted); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) (finding standing under the Wiretap Act based solely on violation of statute); *Klimas*, 465 F.3d at 275–76 (6th Cir. 2006) (finding standing where plaintiff alleged violations of the Cable Act's

The authorities Cartoon Network cites in support of its position do not require a different result. Cartoon Network first contends that *Sterk v. Best Buy Stores, L.P.*, No. 11-cv-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) established that additional injury beyond disclosure is necessary for a plaintiff to have standing when bringing a VPPA claim. (MTD at 22.) But, the *Sterk* opinion is inapposite for two reasons. First, it misapplies controlling Seventh Circuit and Supreme Court law. Specifically, it relies on *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 295 (7th Cir. 2000), in introducing the proposition that because the VPPA requires a plaintiff to be "aggrieved," "a plaintiff must plead an injury beyond a statutory violation to meet the standing requirement of Article III." *Sterk*, 2012 WL 5197901, at *6. However, *Kyles* (along with decades of Supreme Court precedent), expressly holds the opposite—i.e., that when a statute grants a right to relief to an "aggrieved" party, a plaintiff "has standing to sue, *even if she has not been harmed apart from the statutory violation*." *Kyles*, 222 F.3d at 298 (emphasis added); *see also Akins*, 524 U.S. at 19–20.

Second, as explained by the *Hulu* court, the *Sterk v. Best Buy* decision is distinguishable on the facts, and "needs to be considered in," and limited to, its context. *In re Hulu Privacy Litig.*, 2013 WL 6773794, at *8. Most importantly, the privacy provisions, with no claim of economic harm).

*Sterk* court "found that Sterk had not alleged a disclosure and, therefore, must allege some other economic harm . . . to the extent that Sterk made some other allegations about economic harm, the court rejected them as not grounded in the actual facts." *Id.* (citing *Sterk v. Best Buy Stores, L.P.*, No. 11-cv-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012)).[11]

"In sum, the *Sterk* Defendants challenged standing (and injury-in-fact) based on evidence that showed only a transmission of PII by wholly-owned subsidiaries to a parent company, and Plaintiffs did not show any disclosure within the meaning of the VPPA and had no injury and no standing. *Sterk* does not support a

---

[11]    Additionally, the *Sterk v. Best Buy* decision has not even been followed within its own District. In *Sterk v. Redbox Automated Retail, LLC*, No. 11-cv-1729, 2012 WL 3006674, at **8–9 (N.D. Ill. July 23, 2012), Judge Kennelly held that the plaintiffs' allegations that their information was disclosed and retained longer than authorized "support a contention that the plaintiffs were injured, in that their personal information was used in a way they did not authorize or contemplate. As demonstrated by the VPPA itself, the law protects personal information and privacy in some circumstances," and that the plaintiffs' allegations therefore gave them standing to sue. *Id.* Likewise, in a decision reached *after* the *Sterk v. Best Buy* opinion, Judge Kennelly confirmed that VPPA disclosure allegations are sufficient to confer standing. *See Sterk v. Redbox Automated Retail, LLC*, No. 11-cv-1729, 2013 WL 4451223, at *3 (N.D. Ill. Aug. 16, 2013) (noting that "[t]his Court previously decided that the VPPA creates [a legal right, the invasion of which creates standing] and that plaintiffs' claims adequately allege the defendant invaded that right," and holding that plaintiffs' allegations "that their privacy rights, recognized and protected by the VPPA, were violated when Redbox disclosed plaintiffs' PII to a third-party vendor without their consent . . . along with the evidence that plaintiffs have produced showing that the disclosure actually occurred, are sufficient to confer standing.").

conclusion that injury beyond disclosure is a prima facie element of a VPPA

claim." *In re Hulu Privacy Litig.*, 2013 WL 6773794, at *9 (citations omitted).

> B. <u>Because Ellis Pleads that He *Was* Personally Identified by Cartoon Network's Disclosures, Rather than that Such Identification Was Possible, his Injuries are Actual Rather than Speculative, and He Has Standing to Sue.</u>

Cartoon Network is also mistaken in arguing that Ellis alleges only the mere

possibility of identification, rather than alleging that he was actually identified as a

result of its disclosures of his PII. (*See* MTD at 21.)[12] As explained in section I.B

above, Ellis expressly alleges that Cartoon Network *actually disclosed* information

about him in the form of his video viewing history and Android ID, that the

information disclosed was PII, and that he was in fact identified as a result of that

disclosure. (Compl. ¶¶ 12, 15–19, 21, 25, 35, 46–51.) Thus, he does not merely

allege that Bango *could have* identified him using the data Cartoon Network

disclosed; he alleges that Bango *actually did* identify him. (*Id.*)

Moreover, Cartoon Network's cited authorities do not support its position on

this point either. (*See* MTD at 21.) First, *Lujan v. Defenders of Wildlife*, 504 U.S.

---

[12]    While Cartoon Network's defenses take a variety of forms—that Ellis failed to allege the necessary disclosure of his PII (MTD at 16–18), that he failed to allege "that Cartoon Network's alleged disclosure personally identified him," (MTD at 25), and that he must allege more than "just that such identification is theoretically possible or happened to others," (*id.*)—each is focused on the idea that Ellis has alleged only a speculative, rather than actual, harm.

555, 560–61 (1992), simply re-iterates the three-pronged standing test, and does nothing to negate the fact that Ellis alleges that he *was identified* by the information disclosed to Bango. The *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) case, which Cartoon Network (seemingly) cites for the proposition that an "imminent" (rather than actual) injury "must be *certainly impending* to constitute injury in fact[,]" *id.* (emphasis in original), is also misplaced. This Court need not determine whether Ellis's injury is "certainly impending," because he alleges that it already occurred when Cartoon Network disclosed his PII (i.e., his Android ID and video viewing history) to Bango. (Compl. ¶¶ 26–28, 43–54.) Therefore, Ellis's injury (as well as those of the putative class) is "actual," rather than "conjectural" or "hypothetical." *See Clapper*, 133 S. Ct. at 1147; *Lujan*, 504 U.S. at 560.

Likewise, *Palm Beach Golf Ctr.-Boca, Inc., v. Sarris*, 12-80178-civ, 2013 WL 5972173 (S.D. Fla. Oct. 22, 2013), provides no support for Cartoon Network. The court in that case held that to bring suit under a statutory provision, the plaintiff must have had the statutory right at issue violated. *See id.* at 12. That case addressed a plaintiff who was unable to prove, on summary judgment, receipt of a fax in violation of the Telephone Consumer Protection Act. *Id.* It does not abrogate the requirement that Ellis need only plead the disclosure of his PII at this stage of

the proceedings, which he has done. (Compl. ¶¶ 12, 15–19, 21, 25, 35, 46–51.)

Accordingly, the Court should reject Cartoon Network's arguments in this respect as well.

## CONCLUSION

For the reasons stated above, Plaintiff Mark Ellis, individually and on behalf of all others similarly situated, respectfully requests that this Honorable Court deny Cartoon Network's Motion to Dismiss and award such other relief as it deems necessary, reasonable, and just.

Respectfully submitted,

**MARK ELLIS**, individually and on behalf of all others similarly situated,

Dated: June 27, 2014

By:  s/ J. Dominick Larry
　　　　One of Plaintiff's Attorneys

Rafey S. Balabanian (*pro hac vice*)
rbalabanian@edelson.com
Benjamin H. Richman (*pro hac vice*)
brichman@edelson.com
J. Dominick Larry (*pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

Jennifer Auer Jordan
Georgia Bar No. 027857
jennifer@thejordanfirm.com
THE JORDAN FIRM, LLC
1447 Peachtree Street, N.E., Suite 880
Atlanta, GA 30309
Tel: 404.445.8400
Fax: 404.445.8477

*Counsel for Plaintiff and the Putative Class*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiff certifies that the pleading has been prepared in Times New Roman, 14-point type, which is of the font selections approved by the Court in Local Rule 5.1(B).

s/ J. Dominick Larry     

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2014, I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ J. Dominick Larry     