IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARK ELLIS, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | Case No. 1:14-cv-00484-TWT |
| | ) | |
| THE CARTOON NETWORK, INC., a Delaware corporation, | ) ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**REPLY MEMORANDUM IN SUPPORT OF THE CARTOON NETWORK
INC.'S MOTION TO DISMISS PLAINTIFF'S
<u>AMENDED CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................1

ARGUMENT .......................................................................4

I.    PLAINTIFF HAS NOT STATED A CLAIM THAT CARTOON
      NETWORK DISCLOSED HIS PII ...................................................4

      A.    No Court Has Ever Treated a Number Such as the 64-digit Android
            ID as PII Under the VPPA ...................................................4

      B.    Plaintiff's Attempts to Create Issues of Fact Should be Rejected ......11

II.   PLAINTIFF IS NOT A SUBSCRIBER TO THE CARTOON NETWORK
      APP AND THUS NOT A CONSUMER UNDER THE VPPA....................13

III.  PLAINTIFF LACKS ARTICLE III STANDING ..........................................17

CONCLUSION ....................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .........................................................................12

*David v. Alphin*,
 704 F.3d 327 (4th Cir. 2013)...........................................................18

*Edwards v. First Am. Corp.*,
 610 F.3d 514 (9th Cir. 2010) ...........................................................18

*Fair Housing Council v. Main Line Times*,
 141 F.3d 439 (3d Cir. 1998) ............................................................18

*Gladstone Realtors v. Vill. of Bellwood*,
 441 U.S. 91 (1979)...........................................................................17

*Houston v. Marod Supermarkets, Inc.*,
 733 F.3d 1323 (11th Cir. 2013) .......................................................19

*In re Hulu Privacy Litig.*,
 No. C 11-03674, 2012 WL 3282960, (N.D. Cal. Aug. 10, 2012).......................15

*In re Hulu Privacy Litig.*,
 No. C 11-03674 LB, 2013 WL 6773794 (N.D. Cal. Dec. 20, 2013) ..................18

*In re Hulu Privacy Litig.,*
 C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .................. *passim*

*In re Nickelodeon Consumer Privacy Litig.*,
 MDL No. 2443 (SRC) (N.D.N.J., July 2, 2014) ............................... 2, 6, 7, 8, 9

*Johnson v. Microsoft*,
 No. C06-0900RAJ, 2009 WL 179440 (W.D. Wash. June 23, 2009) ....... 10, 11

*Kendall v. Employees Retirement Plan of Avon Prods.*,
    561 F.3d 112 (2d Cir. 2009)............................................................................18

*Klimas v. Comcast Cable Comm'n, Inc.*,
    2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003)........................ 10, 11

*Low v. LinkedIn Corp.*,
    900 F.Supp.2d 1010 (N.D. Cal. 2012) ...................................................... 9, 10

*Murray v. GMAC Mortgage Corp.*,
    434 F.3d 948 (7th Cir. 2006)..........................................................................18

*Organizacion Jd Ltda. v. U.S. Dep't of Justice*,
    124 F.3d 354 (2d Cir. 1997)...........................................................................17

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
    12-80178-CIV, 2013 WL 5972173 (S.D. Fla. Oct. 22, 2013) ................. 19, 20

*Pruitt v. Comcast Cable Holdings*,
    100 F. Appx. 713, 2004 WL 1226935 (10th Cir. 2004) ....................................9

*Spokeo, Inc. v. Thomas Robins*,
    No. 13-1339 (U.S. Sup. 2014)........................................................................19

*United States v. Frank*,
    599 F.3d 1221 (11th Cir. 2010)......................................................................14

*Viacom Int'l Inc. v. YouTube Inc.*,
253 F.R.D. 256 (S.D.N.Y. 2008) .........................................................................11

*Young v. West Publishing Corp.*,
    724 F. Supp. 2d 1268 (S.D. Fla. 2010) ..........................................................19

**Statutes and Regulations**

Electronic Communications Privacy Act
    18 U.S.C. §§ 2517—2712 ........................................................................ *passim*

    18 U.S.C. § 2702(a)(2) ...........................................................................17

    18 U.S.C. § 2710(a)(1) ...........................................................................13

Telephone Consumer Protection Act
    47 U.S.C. § 227 .....................................................................................19

Video Protection Privacy Act ....................................................................... *passim*

**Constitutional Provisions**

U.S. Const. art III ................................................................... 3, *17, 18, 19*

**Other**

*Cartoon Interactive Group Terms of Use*, CartoonNetwork.com,
    http://www.cartoonnetwork.com/legal/termsofuse.html......................................16

MacMillan Online Dictionary, "Subscriber,"
    http://www.macmillandictionary.com/dictionary/american/subscribe ...............14

Merriam–Webster Online Dictionary, "Subscriber,"
    http://www.merriam-webster.com/dictionary/subscriber ....................................14

## PRELIMINARY STATEMENT

In his opposition to Cartoon Network's Motion to Dismiss, Plaintiff acknowledges that the only purported "personally identifiable information" allegedly transmitted to Bango (the 64-digit Android ID) does not, without more, actually identify Plaintiff.  He nevertheless argues that his VPPA claim should survive dismissal because Bango could have combined that 64-digit ID with other unidentified information to identify individuals such as the Plaintiff.[1]  This is not enough to state a claim under the VPPA.

The VPPA prohibits only the disclosure of information that actually identifies both a specific individual and the specific videos that individual viewed—which the 64-digit Android ID does not do.  Plaintiff's opposition tries to circumvent this requirement by cherry-picking language from a recent decision in the *Hulu* matter stating that "context" could render an anonymized ID "the equivalent of the identification of a specific person."  But the *Hulu* court was clear that for information to be personally identifiable under the VPPA it must be "akin" to a name, and that the disclosure of a "unique identifier – without more," does not violate the VPPA, even if that number "hypothetically could have been linked to

---

[1] Plaintiff says in his opposition that the Amended Complaint alleges that Bango did in fact combine the 64-digit ID with other information to identify him, but the Amended Complaint contains no such allegations.  *See* Section I(B), *infra*. Even if it did, however, it would still be insufficient to state a VPPA claim.

video watching."

The court in *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443 (SRC) (N.D.N.J., July 2, 2014) ("In re Nickelodeon") recently reaffirmed the *Hulu* court's conclusion, dismissing a claim that Viacom violated the VPPA by disclosing to Google information such as a user's anonymous username, IP address, and unique device identifier, each time a user watched video on certain Nickelodeon websites. In granting Viacom's motion to dismiss, the court explained that "there is simply nothing on the face of the statute or in its legislative history to indicate that 'personally identifiable information' includes the types of information . . . allegedly collected and disclosed by Viacom."  The court found this to be the case notwithstanding the fact that "this type of information might one day serve as the basis of personal identification after some effort on the part of the recipient" because "the same could be said for nearly any type of personal information; this Court reads the VPPA to require a more tangible, immediate link."

*Hulu* and *In re Nickelodeon* are consistent with the holdings of numerous other courts addressing whether anonymous numbers, like the 64-digit Android ID at issue in this case, constitute PII or similar information.  Plaintiff's attempts to distinguish those cases in his opposition fail.  Nor does Plaintiff's continued mischaracterizations of Bango's alleged public statements change the outcome

mandated by the case law.  Indeed, allowing Plaintiff's claim to survive based solely on such mischaracterizations could render every website and mobile application susceptible to suit under the VPPA because disclosures of **potential** identifiers consistently occur.  This would invite innumerable suits that could survive a motion to dismiss merely by alleging that the recipient could use information to identify the plaintiff—even where (like here) the website or mobile operator itself does not know the user's identity.

The Amended Complaint should also be dismissed on the ground that an unregistered user of a free app, like an unregistered user of a free website, is not entitled to VPPA protection.  Plaintiff's argument that he became a "subscriber" of Cartoon Network when he "committed" to Cartoon Network by downloading the free Cartoon Network app is misguided. Downloading a free app requires no commitment in that the user pays nothing, can decide never to use the app again, and can delete the app from his or her phone at any time—all without any repercussion, cost or continuing obligation.  This is not a subscription.

Finally, notwithstanding the opposition's contention that it is "hornbook" law that a statutory violation without more confers Article III standing, well established precedent requires actual injury to satisfy Article III.  Because Plaintiff does not allege such actual injury, he lacks standing.

## ARGUMENT

## I. PLAINTIFF DOES NOT ALLEGE THAT CARTOON NETWORK DISCLOSED HIS PII

### A.  The 64-digit Android ID is not PII Under the VPPA

An anonymous number like the 64-digit Android ID is not PII under the VPPA.   Plaintiff's opposition asserts that because Cartoon Network cannot establish that Bango is "incapable" of identifying him as an individual, the Amended Complaint should pass the motion to dismiss stage.  *See* Opp. at 7.  In doing so, Plaintiff relies on excerpts from the decision in *In re Hulu Privacy Litig.,* C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)("Hulu"). Specifically, Plaintiff points to the *Hulu* court's statements that "context" could render an anonymized ID "the equivalent of the identification of a specific person;" for example, where a person "disclos[es] a unique identifier and a correlated look-up table."  Opp. at 9; *Hulu*, *11.  According to Plaintiff, the upshot of this language is that all a claimant must do to state a viable claim under the VPPA is allege that an entity could use an anonymous number it receives; along with other information it could collect from other sources, to identify a person.

This mischaracterizes *Hulu*.  The *Hulu* court was clear that to violate the VPPA, the "*disclosed* information must identify a specific person and tie that person to video content that the person watched." *Hulu* at *9 (emphasis added).

And that the disclosure of a "unique identifier – without more" does not violate the VPPA, even if that number "hypothetically could have been linked to video watching." *Id.* at *12, *1. Here, the only thing Plaintiff alleges Cartoon Network *disclosed* to Bango is just such a unique identifier—the 64-digit Android ID. In that regard, Plaintiff's allegations differ significantly even from the hypothetical scenario identified by the *Hulu* court (and recited multiple times in the opposition) where the same entity tries to "skirt liability" under the VPPA by "disclosing a unique identifier and a correlated look-up table." *Hulu* *11; Opp. at 9, 11.

Plaintiff's use of selected excerpts from the *Hulu* decision is also misplaced in that the allegations in the Amended Complaint do not rise to the level of those the *Hulu* court examined and rejected. In *Hulu*, the allegation before the court was that Hulu disclosed to comScore a web address of the "watch page" that contained both the video name and the Hulu user's unique seven-digit ID that, if entered into a web browser, would take comScore to the user's profile page with his or her username. *Hulu* at 13. Thus, using *only information disclosed by Hulu*, comScore "could use the Hulu ID to access the Hulu user's profile page to obtain the user's name." *Id.* at 18. In granting summary judgment to Hulu, the court concluded that there was no evidence that comScore in fact "correlated" the information it received from Hulu in a way that identified a person "such that there

is a disclosure within the meaning of the VPPA." *Id.* at 19.  Here, Plaintiff does not allege that Bango could identify him using only information disclosed by Cartoon Network.  Rather, Plaintiff alleges only that Cartoon Network disclosed to Bango information which could identify him if Bango combined it with other unidentified information that Bango could collect from other sources.  The *Hulu* court was clear, however, that this is not enough because it is not "akin" to disclosing a name. *See id.* at *14.[2]

This same conclusion was reached even more pointedly by the court in *In re Nickelodeon* when it dismissed a VPPA claim brought against Viacom based on its operation of certain Nickelodeon websites (opinion attached as Exhibit A). Plaintiffs had alleged that Viacom violated the VPPA because each time a plaintiff watched a video on one of the websites, Viacom disclosed to its analytics provider, Google, the plaintiff's "anonymous username; IP address; browser setting; 'unique

---

[2] Plaintiff emphasizes that the *Hulu* decision was on summary judgment where the plaintiffs were no longer entitled to a presumption that their allegations were true. Opp. at 9, n.2.  Summary judgment was the first opportunity the *Hulu* court had to conclude that the disclosure of a unique identifier without more cannot constitute a violation of the VPPA.  This is because the theory plaintiffs presented to the court at summary judgment was, as Hulu described it, "a remarkable retreat from where they began with [the] lawsuit" in that plaintiffs originally alleged that Hulu disclosed its users' identities, before narrowing the allegations to the disclosure of an anonymous number that could be used in combination with other information to identify Hulu's customers. *See Hulu* Reply Mem. at 4 [D.E. 76-3].  Here, all Plaintiff alleges Cartoon Network disclosed is the same type of anonymous number that the *Hulu* court found insufficient to give rise to a VPPA claim.

device identifier'; operating system; screen resolution; [and] browser version," along with the title of the video watched. *Id.* at 20. Viacom sought dismissal arguing that the information disclosed was not PII under the VPPA.

The court agreed, holding that "there is simply nothing on the face of the statute or in its legislative history to indicate that 'personally identifiable information' includes the types of information – anonymous user IDs, a child's gender and age, and information about the computer used to access Viacom's websites – allegedly collected and disclosed by Viacom." *Id.* at 18. In doing so, the court explained the holding of *Hulu* as follows:

> Indeed, the *Hulu* decision, which engages in an exhaustive analysis of the VPPA's text and legislative history, holds that PII is information that must link "a specific, identified person and his video habits" – what the *Hulu* court characterizes as any information "akin" to a name.

*Id.* at 19 (quoting Hulu at *12). The *In re Nickelodeon* court thus "conclude[d] that PII is information which must, without more, itself link an actual person to actual video materials." *Id.* Because none of the information Viacom allegedly disclosed "either individually or aggregated together, could without more serve to identify an actual, identifiable Plaintiff and what video or videos that Plaintiff watched," the court concluded that plaintiffs' VPPA claim could not survive. *Id.* at 20.

The *In re Nickelodeon* court was unmoved by the argument that information disclosed by Viacom could potentially be used to identify an actual person. The

court reasoned, "[c]ertainly, this type of information might one day serve as the basis of personal identification after some effort on the part of the recipient, but the same could be said for nearly any type of personal information; this Court reads the VPPA to require a more tangible, immediate link." *Id.* at 22.  This conclusion was buttressed by the VPPA's legislative history which lacked "any indication that PII can be anonymous information which may after investigation lead to the identification of a specific person's video habits." *Id.* at 20.

The court also distinguished between information that identifies a ***device*** and that which identifies a ***person***.  The court noted, for example, that much of the information allegedly disclosed by Viacom "is not even anonymized information about the Plaintiff himself; it is anonymized information about a computer used to access a Viacom site." *Id.* at 20-21.  And that "[k]nowing anonymized information about a computer, and an IP address associated with that computer, will not link actual people (children or adults) to their specific video choices, any more than knowing that an Opinion was written on an HP Compaq running Windows XP located at a Philadelphia IP address will link an actual judge to a specific case." *Id.* at 21.  The same can be said for knowing anonymized information about a mobile device as relied upon by Plaintiff in the instant matter.

The holdings of *In re Nickelodeon* and *Hulu* are consistent with those of

other courts addressing whether anonymous numbers constitute PII or similarly protected information, and Plaintiff's efforts to distinguish those cases fail. For example, the relevant point from *Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713, 714 (10th Cir. 2004), is that even though theoretically, Comcast could have linked the unit address with data from other sources to identify the claimant, in the same way Plaintiff alleges Bango could do here, the *Pruitt* court found that the "converter boxes contain no personally identifiable information" because "[w]ithout the information in the billing or management system one cannot connect the unit address with a specific customer. . . . Consequently, it is the billing system that holds the key to obtaining personally identifiable information." *Id.* at 717. The same logic applies here where the only thing Plaintiff alleges Cartoon Network disclosed does not itself identify a specific person.

Likewise, in *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012), the court dismissed plaintiffs' invasion of privacy claim based on LinkedIn's alleged sharing of users' unique LinkedIn identification numbers with third parties notwithstanding plaintiffs' postulation "that these third parties could, through inferences, de-anonymize this data." Plaintiff tries to distinguish *Low* on the basis that *Low's* plaintiffs alleged only that "third parties [could] theoretically de-anonymize a user's LinkedIn ID number." Opp. at 20-1 (quoting *Low v.*

*LinkedIn Corp.* at 1017). But far from distinguishing *Low*, a review of the operative complaint in *Low* (attached as Exhibit B) reveals that its allegations are no more "theoretical" than those in the Amended Complaint. For example, just like Plaintiff's allegation that Bango purportedly, "is able to identify users visiting [] mobile pages [],"[3]*Low* alleged that "Third Parties are able to place a LinkedIn user's actual identity with his/her personal, Private Browsing History." *Low* Compl. ¶ 20.[4]

Plaintiff's attempts to distinguish Cartoon Network's other cases likewise fail. Plaintiff tries to distinguish *Johnson v. Microsoft*, No. C06-0900RAJ, 2009 WL 179440, *4 (W.D. Wash. June 23, 2009) and *Klimas v. Comcast Cable Communications, Inc.*, 465 F.3d 271 (6th Cir. 2006) on the grounds that they allegedly involved "dynamic" as opposed to "static" IP addresses. *See* Opp. at 15-16. But the *Johnson* court drew no such distinction. Rather, after noting that

---

[3] Opp. at 13; Am. Compl. at 24.

[4] Also like the Amended Complaint here, the *Low* complaint quoted heavily from the websites of the third-parties allegedly receiving information to suggest that identification actually occurred. For example, the *Low* complaint quotes a statement from the website of one third-party analytics company that it "takes into account numerous factors to build a translation of cookies to people" and that it "provide[s] for people-based reference points and calibration which are free from cookie deletion." *Low* Am. Compl. ¶¶ 39-40. It quotes another third-party analytics provider's website as saying that it can "provide a 360 degree view of how consumers engage with online media." *Id.* ¶ 41.

"[s]ome Internet service providers assign static IP addresses . . . but many assign dynamic IP addresses," the court concluded that "an IP address identifies a computer, and can do that only after matching the IP address to a list of a particular Internet service provider's subscribers." *Johnson*, 2009 WL 179440, at *3-4.

Likewise, in *Klimas*, in confirming the district court's conclusion that an IP Address without more did not identify a person, the Sixth Circuit considered it "irrelevant" that the "[district] court overlooked the fact that not all IP addresses are dynamic and that the complaint did not allege that such was the case." *See Klimas*, 465 F.3d at 280, n. 2.  Finally, in *Viacom Int'l Inc. v. YouTube Inc.,* 253 F.R.D. 256 (S.D.N.Y. 2008), even though the question of whether YouTube login IDs were PII under the VPPA arose in the context of a discovery dispute, it did not alter the court's conclusion that "an anonymous pseudonym . . . without more cannot identify specific individuals." *Id.* at 262.[5]

**B.    Plaintiff's Attempts to Create Issues of Fact Should be Rejected**

In a thinly veiled effort to avoid the operative case law, Plaintiff's opposition

---

[5] Plaintiff also asserts that Cartoon Network has not opposed the "knowingly" element of the VPPA claim and that its knowledge therefore "can be inferred at this stage."  Opp. at 12, n. 3.  This is incorrect.  Cartoon Network made clear in its initial moving memorandum that it reserved the right to contest factual allegations such as its "knowledge" at summary judgment based on facts adduced in discovery and that it accepted certain allegations as true solely for the purpose of the motion to dismiss.  *See* Mem. of Law in Supp. of Mot. to Dismiss at 12, n. 4.

continues to miscast excerpts from Bango's website to convince the Court that the Amended Complaint alleges an actual identification of individuals. For example, the opposition appears to quote Bango's website to support the proposition that Bango "'automatically'" identifies "specific individuals like [Plaintiff] by their Android IDs." Opp. at 12. The website statement from which Plaintiff excerpts the word "automatically," however, is not even about the analytics service Bango provided to Cartoon Network. Rather, it relates to Bango's distinct mobile billing service (which Plaintiff does not allege Cartoon Network utilized). The full quote from which Plaintiff excerpts reads as follows:

> The Bango Payments Platform enables the world's biggest app stores and digital merchants to bill customers on their mobile devices. Bango's pervasive presence across the internet creates a unique platform effect for our partners, automatically identifying and billing hundreds of millions of their users, who benefit from frictionless, one-click payments.[6]

None of the allegations referenced in Plaintiff's opposition rise above "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [that] will not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For example, Plaintiff cites paragraphs 24, 35, and 48 to support the proposition that the Amended Complaint alleges Bango "actually

---

[6] The specific web page at issue has since been updated. A copy can be found at http://www.web.archive.org/web/20140516225900/http://bango.com (last visited July 17, 2014).

identifies *him* as having viewed specific video materials." Opp. at 10 (emphasis in original). Paragraph 35 simply contains the conclusory allegation that each time the Plaintiff viewed a clip, "Cartoon Network disclosed his PII-in the form of the title of the videos he had watched and his unique Android ID-to third party analytics company Bango." Am. Compl. ¶ 35. Paragraph 48 contains a similarly conclusory allegation that the Android ID and viewing history combination is PII because it enables Bango to identify "users such as Ellis." *Id.* ¶ 48. Paragraph 24 is Plaintiff's own speculation that "unique identifiers are key to Bango's ability to attribute data (like names, addresses, and billing information) to a single user across multiple devices and platforms." *Id.* ¶ 24.[7]

## II.    PLAINTIFF IS NOT A SUBSCRIBER OF CARTOON NETWORK

The VPPA defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiff concedes that he neither rented nor purchased anything from Cartoon

---

[7] The Plaintiff's opposition also suggests that certain allegations in the Amended Complaint are statements by Bango when they are not. For example, the opposition asserts that the Amended Complaint "details how Bango's business model specifically involves collecting and utilizing Android IDs 'because [they] can be precisely linked to an individual person, and the person cannot avoid being tracked while using the device.'" Opp. at 11. Tracking back to the paragraph of the Amended Complaint being quoted, however, reveals that the quoted language does not come from Bango at all. Rather, the relevant paragraph in the Amended Complaint is Plaintiff's own (uncited) conclusion that Android IDs are "a particularly attractive identifier for analytics companies..." Am. Compl. ¶ 17.

Network.  Instead, he argues that he is a "subscriber" of Cartoon Network because he downloaded and watched videos on Cartoon Network's free app. This definition of "subscriber," however, is untenable.

Where a term is not defined by a statute (as with "subscriber"), the "ordinary and plain meaning" of the word as it is "commonly understood" is applied. *United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010) (quotation omitted). The ordinary and plain meaning of subscriber is something more than a mere user and implies that something was, in fact, subscribed to.  No one would contend that a person who visits a website to play a free video game is a "subscriber" of that video game or website.  Nor would they contend that a person who visits the TSA website to see how much toothpaste they can bring on a flight is a "subscriber" of the TSA.  The same reasoning applies here. [8]

---

[8] Plaintiff argues that Cartoon Network "does not offer a single definition or example of usage in support, much less a definition or example that defeats Plaintiff's position."  Opp. at 20.  As an initial matter, it is Plaintiff's burden to adequately allege that he is a subscriber under the VPPA, which he fails to do. Moreover, numerous dictionary definitions confirm the commonly understood and ordinary meaning of the term "subscriber":  *See* MacMillan Online Dictionary ("someone who pays money in order to receive something regularly, for example copies of a newspaper or magazine, or a service"), *available at* http://www.macmillandictionary.com/dictionary/american/subscribe  (last visited July 17, 2014); Merriam–Webster Online Dictionary ("to pay money to get a publication or service regularly"), *available at* http://www.merriam-webster.com/dictionary/subscriber  (last visited July 17, 2014).

Plaintiff tries to mislead the Court by asserting that he "committed to his subscription" by downloading the App.  Opp. at 19.  The suggestion that Plaintiff "committed" to anything, however, is nonsensical.  Downloading a free app entails zero commitment. The user pays nothing, can decide never to use the app, and can delete the app from his or her phone at any time—without any repercussion, cost or continuing obligation.  Indeed, it takes seconds to delete an app from a phone.

Perhaps recognizing as much, Plaintiff's opposition again resorts to mischaracterizing the *Hulu* case.  Specifically, it asserts that the *Hulu* court found a "subscriber relationship" where the plaintiffs "'visited hulu.com and viewed video content.'" Opp. at 19 (quoting *In re Hulu Privacy Litig.*, No. C 11-03674, 2012 WL 3282960, *8 (N.D. Cal. Aug. 10, 2012)).  The court's full reasoning for finding that plaintiffs there were subscribers, however, was that:

> Plaintiffs pleaded more than just visiting Hulu's website. . . . They visited hulu.com and viewed video content. The resurrected previously-deleted cookies allowed their data to be tracked regardless of whether they were registered and logged in. Hulu gave Scorecard research Plaintiffs' Hulu profile identifiers linked to their individual Hulu profile pages that included name, location preference information designated by the user as private, and Hulu username.

*Id.* (internal citations and quotations omitted).  None of these factors other than viewing videos on the Cartoon Network app are present here as Cartoon Network

did not require users to register or even provide their names.[9]

Plaintiff's argument that Cartoon Network "embraces" Plaintiff's definition by "referring to users of its mobile apps as subscribers or account holders within its own Terms of Use" is also unavailing.  Opp. at 19.  The Terms of Use cited by Plaintiff use the terms "subscribers" and "account holders" one time each in the "Copyrights and Copyright Agent" section. That section addresses copyright policy for user generated content posted in Cartoon Network website forums by registered users of the website.  As there is no way to upload content to the Cartoon Network app, this section has no direct relationship to users of the app.[10] Indeed, the Terms of Use make clear that the reoccurring terms "'you' and 'your,' [] means you, the end user of the Services we provide."  *Id.*

Had Congress wanted the VPPA to cover every casual user of website or mobile application it could have expanded the definition of the term "Consumer" to include such individuals. The Electronic Communications Privacy Act ("ECPA"), which appears in the same chapter of the U.S. Code as the VPPA, uses the terms "customer and subscriber" where it covers a range of users broader than

---

[9]  The fact that Cartoon Network does not know the names of its alleged "subscribers" confirms the commonsense notion that they are not subscribers at all.

[10]  *Cartoon Interactive Group Terms of Use*, CartoonNetwork.com, http://www.cartoonnetwork.com/legal/termsofuse.html (last accessed July 7, 2014).

subscribers.  *See e.g.*, 18 USC § 2702(a)(2).  And even those terms do not cover every single person involved in a communication.  *See e.g. Organizacion Jd Ltda. v. U.S. Dep't of Justice*, 124 F.3d 354, 360 (2d Cir. 1997) ("ECPA, therefore, clearly distinguishes between 'customers' and mere 'persons' or 'individuals' with other types of interests in electronic communications. The language used throughout the ECPA suggests that customer' must be defined narrowly to give effect to this distinction.").

## III.   PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff concedes that he has suffered no actual harm or damage as a result of Cartoon Network's alleged disclosure of the 64-digit Android ID to Bango. Instead, he argues in his opposition that alleging a violation of the VPPA is sufficient to confer Article III standing.  Contrary to Plaintiff's assertion that it is "hornbook law" that a statutory violation without more confers Article III standing (*See* Opp. at 21), courts routinely require actual injury to satisfy Article III.

The Supreme Court, for example, has made clear that "[i]n no event … may Congress abrogate the Art. III minima: A plaintiff must always have suffered a distinct and palpable injury to himself … that is likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (internal quotation marks omitted).  Likewise, the Fourth Circuit has

rejected the argument that the "deprivation of [a] statutory right is sufficient to constitute an injury-in-fact for Article III standing" because such "theory of Article III standing is a non-starter as it conflates statutory standing with constitutional standing." *David v. Alphin*, 704 F.3d 327, 338-39 (4th Cir. 2013).   The Second Circuit has likewise rejected the argument that "either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of [the plaintiff's] entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing." *Kendall v. Employees Retirement Plan of Avon Prods.,* 561 F.3d 112, 121 (2d Cir. 2009).   And the Third Circuit has found that a statutory violation "does not automatically confer standing on any plaintiff, even one who holds the status of a private attorney general."   *See e.g. Fair Housing Council v. Main Line Times*, 141 F.3d 439, 443-44 (3d Cir. 1998).

Notwithstanding this well-settled principle, certain circuits have disregarded the injury-in-fact requirement and held that a statutory violation can create Article III standing.   *See e.g. Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 952–53 (7th Cir. 2006); *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010). Most of the cases Plaintiff cites come from these circuits.[11]   A writ of certiorari is

---

[11]  Plaintiff emphasizes the *Hulu* court's conclusion in *In re Hulu Privacy Litig.*, No. C 11-03674 LB, 2013 WL 6773794, *5 (N.D. Cal. Dec. 20, 2013), that plaintiffs there need not allege any injury beyond disclosure in order to assert their

currently before the Supreme Court asking it to decide the propriety of those departures from traditional Article III standing requirements.[12]

Courts within this circuit have concluded that Article III standing requires injury in fact notwithstanding an allegation of a statutory violation.[13]  In *Young v. West Publishing Corp.*, 724 F. Supp. 2d 1268 (S.D. Fla. 2010), which Plaintiff offers no response to, the court dismissed plaintiffs' claim under the DPPA for lack of standing where plaintiffs "failed to plea[d] any facts showing that [defendant] has disclosed the personal information for an impermissible use. Therefore, plaintiffs have failed to show that they have suffered an injury-in-fact." *Id.* at 1281.  In *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 12-80178-CIV, 2013 WL 5972173 (S.D. Fla. Oct. 22, 2013), the court found that plaintiff lacked Article III standing under the TCPA where he could not say whether he received the fax at

---

VPPA claims. The court there, however, expressly noted that (unlike the Court here), it was bound by the holding in *Edwards* that the Ninth Circuit recognizes that a plaintiff satisfies Article III's injury-in-fact requirement by alleging a violation of a statutorily-created right. *Id* at * 8.

[12] *See* Petition For A Writ Of Certiorari, *Spokeo, Inc. v. Thomas Robins et al.*, No. 13-1339 (U.S. Sup. 2014).

[13]  The only case from within the Eleventh Circuit Plaintiff cites is *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013).  *See* Opp. at 22. The question there, however, was whether the fact that plaintiff patronized defendant's supermarket solely to monitor ADA compliance (as opposed to being a bona fide customer) deprived him of standing to bring a civil action for injunctive relief under the ADA.

issue.  In doing so, the court noted that "Congress can enact a statute . . . that puts into place a 'bounty'—a reward—for a plaintiff who assists in enforcing federal laws.  However, there still must be an injury for the plaintiff to recover under the statute." *Id.* at 18.

This Court should follow established precedent and hold that the VPPA does not support standing based on a mere statutory violation without concrete particularized harm.  Such a conclusion is particularly warranted where Plaintiff has not alleged that Cartoon Network's alleged disclosure actually identified him, as opposed to such identification being theoretically possible based on Plaintiff's own strained interpretation of Bango's website.

## **CONCLUSION**

For the foregoing reasons, and those stated in Cartoon Network's initial memorandum, this Court should grant Cartoon Network's Motion to Dismiss the Amended Complaint with prejudice.

Dated: July 18, 2014               /s/ Jeffrey Landis
                                   Marc Zwillinger (*admitted pro hac vice*)
                                   marc@zwillgen.com
                                   Jon Frankel (*admitted pro hac vice*)
                                   jon@zwillgen.com
                                   Jeffrey Landis (*admitted pro hac vice*)
                                   jeff@zwillgen.com

ZWILLGEN PLLC
1900 M. Street NW, Suite 250
Washington, DC 20036
(202) 706-5205 (telephone)
(202) 706-5298 (facsimile)

James A. Lamberth
Georgia Bar No. 431851
james.lamberth@troutmansanders.com
Alan W. Bakowski
Georgia Bar No. 373002
alan.bakowski@troutmansanders.com
TROUTMAN SANDERS LLP
600 Peach Tree Street, N.E., Suite 5200
Atlanta, Georgia 30308
(404) 885-3000 (telephone)
(404) 962-3900 (facsimile)

***Attorneys for Cartoon Network, Inc.***

## **CERTIFICATE OF COMPLIANCE**

In compliance with Local Rule 7.1(D), I hereby certify that the foregoing

REPLY MEMORANDUM IN SUPPORT OF CARTOON NETWORK INC.'S

MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION

COMPLAINT has been prepared in conformity with Local Rule 5.1.  This brief

was prepared with Times New Roman (14 point) type.

This 18th day of July, 2014.

/s/ Jeffrey Landis
Jeffrey Landis

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2014, I electronically filed the foregoing

REPLY MEMORANDUM IN SUPPORT OF CARTOON NETWORK INC.'S

MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION

COMPLAINT with the Clerk of Court using the CM/ECF system, which will send

a notice of electronic filing to the following counsel of record:

> Jennifer Auer Jordan
> THE JORDAN FIRM, LLC
> Suite 880
> 1447 Peachtree Street, N.E.
> Atlanta, GA 30309
>
> Benjamin H. Richman
> Rafey S. Balabanian
> James Dominick Larry
> EDELSON PC
> 350 North LaSalle Street, Suite 1300
> Chicago, IL 60654

This 18th day of July, 2014.

> /s/ Jeffrey Landis
> Jeffrey Landis
> ZWILLGEN PLLC
> 1900 M. Street NW, Suite 250
> Washington, DC 20036
> (202) 706-5205 (telephone)
> (202) 706-5298 (facsimile)