[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 14-15046

D.C. Docket No. 1:14-cv-00484-TWT

MARK ELLIS,
individually and on behalf of all others similarly situated,

                                Plaintiff - Appellant,

versus

THE CARTOON NETWORK, INC.,
a Delaware Corporation,

                                Defendant - Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

(October 9, 2015)

Before JORDAN and DUBINA, Circuit Judges, and GOLDBERG,[*] Judge.

JORDAN, Circuit Judge:

This appeal from the dismissal of a complaint presents two issues of first impression concerning the Video Privacy Protection Act, 18 U.S.C. § 2710. First, who is a "subscriber" (and therefore a "consumer") under the Act? Second, what exactly is the "personally identifiable information" protected by the Act? We conclude that a person who downloads and uses a free mobile application on his smartphone to view freely available content, without more, is not a "subscriber" (and therefore not a "consumer") under the VPPA. Given our ruling, we leave for another day the contours of the term "personally identifiable information."

# I

Congress enacted the VPPA in 1988 after a newspaper "published a profile of [Supreme Court nominee and then D.C. Circuit] Judge Robert H. Bork" which contained the titles of 146 films he and his family had rented from a local video store. *See* S. Rep. 100-599, 2d Sess., at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342. *See also Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 621 (7th Cir. 2014) (recounting the history of the VPPA). Recognizing, as Justice Brandeis had decades earlier, that "subtler and more far reaching means of invading privacy have become available," *Olmstead v. United States*, 277 U.S. 483, 473 (1928)

---

[*] The Honorable Richard Goldberg, Judge of the United States Court of International Trade, sitting by designation.

2

(Brandeis, J., dissenting), the Act sought "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials . . . ." 134 Cong. Rec. S5396-08, S. 2361 (May 10, 1988). Senator Patrick Leahy explained that the new law was meant to protect "our right to privacy [in] the choice of movies that we watch with our family in our own homes," as "[t]hese activities are at the core of any definition of personhood." *Id.* at S5397-01.

Subject to some exceptions that do not apply here, *see Sterk*, 770 F.3d at 621, the VPPA generally prohibits "video tape service providers" from knowingly disclosing, to a third-party, "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b). The Act provides a federal cause of action for aggrieved "consumers," allowing them to recover actual or liquidated damages of at least $2,500, punitive damages, attorneys' fees and costs, and other appropriate preliminary and equitable relief. *See* 18 U.S.C. § 2710(c). Under the VPPA, "the term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." § 2710(a)(1). "[T]he term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." § 2710(a)(3).[1]

---

[1] Cartoon Network does not dispute that it is a "video tape service provider" as that term is defined by the Act, i.e., "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio

3

Congress amended the VPPA in 2012 "to reflect the realities of the 21st century." 158 Cong. Rec. H6849-01 (Dec. 18, 2012). Essentially, the changes allowed consumers greater flexibility to share their video viewing preferences, while maintaining their privacy, by clarifying that video tape service providers may obtain informed, written consent of consumers on an ongoing basis via the Internet. The 2012 changes did not alter the VPPA's definitions of "consumer" or "personally identifiable information." *See id.* ("This legislation does not change the scope of who is covered by the VPPA or the definition of 'personally identifiable information.'").

## II

We begin by recounting the pertinent allegations of the complaint and summarizing the district court's order.

### A

Cartoon Network provides a free mobile application ("app" for short) for smartphones called the CN app. Persons can download the app to watch clips or episodes of TV shows on Cartoon Network, including "Tom and Jerry," "Looney Toons," "Pokémon," and "Transformers." CN app users can also log in with their television provider information to view additional content. If, however, a user

---

video materials, or any person or other entity to whom a disclosure is made under [§ 2710(b)(2)(D) or (E)], but only with respect to the information contained in the disclosure." § 2710(a)(4). We therefore do not address the issue.

simply wants to view the freely available content on the CN app, he does not have to create a login account. The user can simply view the content on the app's home screen without having to provide any information to Cartoon Network. The CN app does not ask users for their consent to share or otherwise disclose personally identifiable information to third parties.

Cartoon Network identifies and tracks an Android smartphone user on the CN app through his mobile device identification or Android ID, which is "a 64-bit number (hex string) that is randomly generated when a user initially sets up his device and should remain constant for the lifetime of the user's device." Cartoon Network keeps track of an Android user's viewing history by maintaining a record of "every video clip or [episode] viewed by the user" via the Android ID number. Cartoon Network then sends this information to a third-party data analytics company called Bango. Each time a user closes out of the CN app on his Android device, "[a] complete record"—including the user's "Android ID and a list of the videos he viewed"—is sent to Bango.

Bango specializes "in tracking individual behaviors across the Internet and mobile applications . . . [and claims] that its technology 'reveals customer behavior, engagement and loyalty across and between all [ ] websites and apps.'" Bango uses Android IDs "to identify and track specific users across multiple electronic devices, applications, and services." Because Bango is apparently

5

"smarter than the average bear," *see* The Yogi Bear Show, *Trying to Escape Jellystone Park* (Hanna-Barbera Prod. 1961), it can "automatically" link an Android ID to a particular person by compiling information about that individual from other websites, applications, and sources. So when Cartoon Network sends Bango the Android ID of a CN app user along with his video viewing history, Bango associates that video history with a particular individual.

B

In 2013 Mark Ellis downloaded Cartoon Network's free CN app on his Android smartphone to watch video clips.  Without his consent, Cartoon Network kept records of the videos he watched and shared those records with Bango each time Mr. Ellis closed out of the CN app. Cartoon Network did not provide Bango with Mr. Ellis' name, address, or social security number, but rather the combination of Mr. Ellis' Android ID and video viewing records.  Because Bango is able to identify Mr. Ellis from his Android ID, it knows which videos he watched.

Mr. Ellis sued Cartoon Network under the VPPA.  He alleged that he was a "subscriber" of Cartoon Network and therefore a "consumer" under the Act, and claimed that Cartoon Network violated the Act when it disclosed his "personally identifiable information"—his Android ID and his video viewing records—to Bango.  Cartoon Network moved to dismiss Mr. Ellis' amended complaint on a

6

number of grounds, and the district court granted that motion. *See Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014).

The district court concluded that Mr. Ellis was a "subscriber," and therefore a "consumer," under the VPPA, and that he had pled a cognizable injury. The district court reasoned that Mr. Ellis alleged "more than simply visiting [Cartoon Network's] website." *Id.* at *2. To be a "subscriber," the district court explained, a person did not have to be a paying customer or log in or register. *Id.* Because Mr. Ellis had downloaded the CN app on his smartphone, he was a "subscriber" and ergo a "consumer." *Id.*

The district court ruled, however, that Mr. Ellis' Android ID and video viewing records were not "personally identifiable information" under the VPPA because they did not, "in [their] own right, without more, link an actual person to actual video materials." *Id.* at *3. Reasoning that the emphasis of "personally identifiable information" in the Act was "on disclosure, not comprehension by the receiving person," the district court held that there was no violation of the VPPA because Bango had to take additional steps to match the Android ID to Mr. Ellis. *Id.* Although the district court acknowledged that an Android ID is "unique to each user and device," it was not akin to a name. *Id.*

**III**

7

We review the district court's dismissal of Mr. Ellis' amended complaint under Rule 12(b)(6) *de novo*, accepting all factual allegations in the complaint as true and construing them in the light most favorable to Mr. Ellis. *See*, *e.g.*, *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008). The district court's interpretation of the VPPA is also subject to plenary review. *See*, *e.g.*, *United States v. Pistone*, 177 F.3d 957, 958 (11th Cir. 1999); *Centel Cable Television Co. Fla., v. Thomas J. White Dev. Corp.*, 902 F.2d 905, 908 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to make a claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 544 U.S. 550, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## A

Mr. Ellis contends, and the district court concluded, that he is a "consumer" under the VPPA because he is a "subscriber" of Cartoon Network and its CN app. For the reasons which follow, we disagree.

The VPPA does not define the term "subscriber," and we, as a circuit, have yet to address what the term means. The few district courts that have weighed in on the issue appear to be divided. *Compare*, *e.g.*, *Yershov v. Gannett Satellite Info.*

8

*Network, Inc.*, ___ F.Supp. 3d ___, 2015 WL 2340752, at *9–10 (D. Mass. May 15, 2015) (holding that a person who simply downloads a free app on a mobile device is not a "subscriber"), and *Austin-Spearman v. AMC Network Entm't LLC*, ___ F.Supp. 3d ___, 2015 WL 1539052, at *6–8 (S.D.N.Y. Apr. 7, 2015) (explaining that "casual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of subscription," and holding that a person who merely visits a provider's website and watches video clips is not a "subscriber"), *with, e.g., Locklear v. Dow Jones & Co., Inc.*, ___ F.Supp. 3d ___, 2015 WL 1730068, at *3–4 (N.D. Ga. Jan 23, 2015) (holding that "if a plaintiff, in addition to visiting a website, pleads that he or she also viewed video content on that website, that plaintiff is a 'subscriber' to a service within the meaning of the VPPA"). *Cf. In re Hulu Privacy Litig.*, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 12, 2012) ("Plaintiffs pleaded more than just visiting Hulu's website. They were subscribers of goods and services.").

We begin our statutory analysis with the ordinary meaning of the term "subscriber." *See e.g., Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S. Ct. 2247, 2254 (2013); *United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015). One dictionary defines "subscriber" as a person who is "registered to pay for and receive a periodical, service, theater tickets, etc. for a specified period of time." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1427 (4th ed. 2000). Another

9

similarly defines "subscriber" as a "contributor to a project, fund, etc.; a person subscribing to a periodical, for share issue, etc." 2 SHORTER OXFORD ENGLISH DICTIONARY 3089 (5th ed. 2002).  *See also* BLACK'S LAW DICTIONARY 1655 (10th ed. 2014) (defining "subscribe" as to "agree to take and pay for something, esp. something regularly delivered").  Although most definitions of "subscribe" or "subscriber" involve payment of some sort, not all do. For example, one dictionary defines "subscriber" as "one that favors, aids, or supports (as by money contribution, moral influence, [or] personal membership)."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2278 (3d ed. 1981).

We agree with the district court that payment is not a necessary element of subscription. *See Ellis,* 2014 WL 5023535, at *2.  The term "subscriber" is not preceded by the word "paid" in § 2710(a)(1) of the VPPA, and there are numerous periodicals, newsletters, blogs, videos, and other services that a user can sign up for (i.e., subscribe to) and receive for free. *See Hulu*, 2012 WL 3282960, at *8. Payment, therefore, is only one factor a court should consider when determining whether an individual is a "subscriber" under the VPPA. So the fact that Mr. Ellis did not pay Cartoon Network to view videos on its CN app does not prevent him from being a "subscriber" under the Act.  But his merely downloading the CN app for free and watching videos at no cost does not make him a "subscriber" either.

10

The dictionary definitions of the term "subscriber" we have quoted above have a common thread. And that common thread is that "subscription" involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity. As one district court succinctly put it: "Subscriptions involve some or [most] of the following [factors]: payment, registration, commitment, delivery, [expressed association,] and/or access to restricted content." *Yershov*, 2015 WL 2340752, at *9. *See also Austin-Spearman*, 2015 WL 1539052, at *6 ("Whatever the nature of the specific exchange, what remains is the subscriber's deliberate and durable affiliation with the provider: whether or not for payment, these arrangements necessarily require some sort of ongoing relationship between provider and subscriber, one generally undertaken in advance and by affirmative action on the part of the subscriber, so as to supply the provider with sufficient personal information to establish the relationship and exchange.").

In *Yershov*, the plaintiff alleged that he was a "subscriber" under the VPPA because he had downloaded USA Today's mobile app on his Android device, and that app allowed him to watch news and sports video clips. *See id.* at *1. There was no charge for the app, and the plaintiff did not register with, or provide any information to, USA Today through the app. *See id.* at *2. Concluding that subscriptions involve either "payment, registration, commitment, delivery, [ ] or

11

access to restricted content," the district court held in *Yershov* that mere users of the USA Today app do not fit within that understanding, and therefore "are not 'subscribers' within the VPPA's definition of consumer." *Id.* at *9–10.

We find *Yershov* persuasive, and conclude it is the better reasoned of the existing opinions on the issue. It is based on the ordinary meaning of the term "subscriber," and therefore is better grounded in the statutory text. Congress could have employed broader terms in defining "consumer" when it enacted the VPPA (e.g., "user" or "viewer") or when it later amended the Act (e.g., "a visitor of a web site or mobile app"), but it did not.

**B**

In concluding that Mr. Ellis was a "subscriber," the district court relied on the analysis in *Hulu*. *See Ellis*, 2014 WL 5023535, at *2. That reliance, however, was misplaced. *Hulu* did not hold that simply pleading "more than just visiting [a] website" is sufficient to make a person a "subscriber" under the VPPA. *See Hulu*, 2012 WL 3282960, at *8. Although the district court in *Hulu* noted that the "[p]laintiffs had pleaded more than just visiting Hulu's website," *id.*, this observation was in response to Hulu's argument that "even if payment is not required to be a subscriber, being a subscriber requires more than just visiting Hulu." *Id.* at *7. The district court in *Hulu* denied the motion to dismiss because the plaintiffs did a lot more than just visit Hulu's website. They "signed up for a

12

Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services." *Id.* In short, the district court's language in *Hulu* simply and correctly refuted Hulu's claim that the plaintiffs had done nothing more than visit Hulu's website. *See id.* *7–8.

We do not understand *Hulu* to stand for the broad proposition that persons do not have to log in or register to be considered subscribers. The district court in *Hulu* noted that Hulu's cookies "allowed [the plaintiffs'] data to be tracked regardless of whether they were registered and logged in," *id.* at *8 (internal quotation marks and citation omitted), but, as noted earlier, those plaintiffs also alleged that they had previously created Hulu accounts, registered, and logged in. The district court's observation in *Hulu* that a VPPA violation could occur when the plaintiffs were not logged on to Hulu's service is just another way of saying that the Washington video store could have violated the VPPA, even if Judge Bork forgot his video store rental card, had it been able to physically identify him as the person who rented a particular movie and then given that information to a third party.

Mr. Ellis did not sign up for or establish an account with Cartoon Network, did not provide any personal information to Cartoon Network, did not make any payments to Cartoon Network for use of the CN app, did not become a registered user of Cartoon Network or the CN app, did not receive a Cartoon Network ID, did

13

not establish a Cartoon Network profile, did not sign up for any periodic services or transmissions, and did not make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content. Mr. Ellis simply watched video clips on the CN app, which he downloaded onto his Android smartphone for free. In our view, downloading an app for free and using it to view content at no cost is not enough to make a user of the app a "subscriber" under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app. Importantly, such a user is free to delete the app without consequences whenever he likes, and never access its content again. The downloading of an app, we think, is the equivalent of adding a particular website to one's Internet browser as a favorite, allowing quicker access to the website's content. Under the circumstances, Mr. Ellis was not a "subscriber" of Cartoon Network or its CN app. *See Yershov*, 2015 WL 2340752, at *9.

We recognize that the district court in *Austin-Spearman*, 2015 WL 1539052, at *7, believed that the district court here correctly resolved the "subscriber" issue. Although we generally agree with the approach and result of *Austin-Spearman*— the case held that a person who visited the free website of a cable television network to watch videos was not a "subscriber" of the network under the VPPA – we do not think that the district court's resolution here is consistent with the ordinary meaning of the term "subscriber." As we have explained, the free

14

downloading of a mobile app on an Android device to watch free content, without more, does not a "subscriber" make.

## III

Because Mr. Ellis is not a "subscriber" under the VPPA, we affirm the district court's order dismissing his amended complaint.[2]

**AFFIRMED.**

---

[2] Given the basis for our ruling, we express no view on the district court's reading of the term "personally identifiable information" in the VPPA.

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 09, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 14-15046-DD
Case Style: Mark Ellis v. The Cartoon Network, Inc.
District Court Docket No: 1:14-cv-00484-TWT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Elora Jackson, DD at (404) 335-6173.

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs